No. 2013-1529

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CEATS, INC.,
*Plaintiff-Appellant,*

vs.

CONTINENTAL AIRLINES, INC., ALASKA AIRLINES, INC.,
HORIZON AIR INDUSTRIES, INC., DELTA AIR LINES, INC.,
JETBLUE AIRWAYS CORPORATION, UNITED AIR LINES, INC.,
VIRGIN AMERICA, INC., US AIRWAYS, INC., TICKETMASTER, LLC,
TICKETSNOW.COM, INC., and LIVE NATION WORLDWIDE, INC.,
*Defendants-Appellees,*

and

AIRTRAN AIRWAYS, INC.,
*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Texas in Case No. 6:10-CV-120,
Judge Michael H. Schneider

## NON-CONFIDENTIAL OPENING BRIEF OF PLAINTIFF-APPELLANT

Dean A. Dickie
Ryan C. Williams
MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.
225 West Washington Street
Suite 2600
Chicago, IL 60606
Telephone: 312.460.4200
Facsimile: 312.460.4288
dickie@millercanfield.com
williamsr@millercanfield.com

*Attorneys for Plaintiff-Appellant
Ceats, Inc.*

November 22, 2013

George L. Hampton IV
Colin C. Holley
HAMPTONHOLLEY LLP
2101 East Coast Highway
Suite 260
Corona del Mar, CA 92625
Telephone: 949.718.4550
Facsimile: 949.718.4580
ghampton@hamptonholley.com
cholley@hamptonholley.com

*Attorneys for Plaintiff-Appellant
Ceats, Inc.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the Appellant, CEATS, Inc., certifies the following:

1. The full name of every party or amicus represented by me is:

> CEATS, Inc.

2. The name of the real party in interest represented by me is:

> CEATS, Inc.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

> Not applicable.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

> **Dean A. Dickie**
> Miller, Canfield, Paddock and Stone, P.L.C.
> 225 West Washington Street, Suite 2600
> Chicago, IL 60606
>
> **Ryan C. Williams**
> Miller, Canfield, Paddock and Stone, P.L.C.
> 225 West Washington Street, Suite 2600
> Chicago, IL 60606
>
> **George Leo Hampton, IV**
> HamptonHolley LLP
> 2101 East Coast Highway, Suite 260
> Corona Del Mar, CA 92625
>
> **Colin C. Holley**
> HamptonHolley LLP
> 2101 East Coast Highway, Suite 260
> Corona Del Mar, CA 92625

s/ Dean A. Dickie

Dean A. Dickie
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
225 West Washington Street, Suite 2600
Chicago, IL 60606
Telephone: 312.460.4227
Facsimile: 312.460.4288

*Counsel for Plaintiff-Appellant Ceats, Inc.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ...................................................................vi

STATEMENT OF RELATED CASES .......................................................1

STATEMENT OF JURISDICTION...........................................................2

ISSUES FOR REVIEW ............................................................................3

STATEMENT OF THE CASE ..................................................................4

    A.    PRELIMINARY STATEMENT.....................................................4

    B.    PROCEDURAL HISTORY ...........................................................6

STATEMENT OF FACTS .........................................................................7

    A.    BACKGROUND FOR THE UNDERLYING LAWSUIT.................7

    B.    THE UNDISCLOSED RELATIONSHIP BETWEEN
        FAULKNER AND DEFENDANTS' COUNSEL.............................8

        1.    Background to *Karlseng v. Cooke* ............................................8

        2.    The Mediation of the CEATS' Underlying Patent Suit.............8

        3.    The Decision in *Karlseng v. Cooke* .........................................10

        4.    CEATS' Response to *Karlseng* Decision ................................10

               [The material omitted from p. 11 contains a quote from
               Appellant's Confidential Mediation Statement.]

    C.    JURY VERDICT AND POST-JUDGMENT RELIEF ....................12

    D.    CEATS LEARNS OF FAULKNER'S LAVISH
        RELATIONSHIP WITH FISH ....................................................13

SUMMARY OF ARGUMENT .................................................................13

ARGUMENT ..........................................................................................16

    A.    STANDARD OF REVIEW ..........................................................16

    B.    THE DISTRICT COURT ERRED IN HOLDING THAT THE
        NEUTRALITY AND DISCLOSURE REQUIREMENTS FOR
        MEDIATORS ARE SUBSTANTIALLY DIFFERENT THAN
        THOSE FOR ARBITRATORS OR JUDGES ................................17

# TABLE OF CONTENTS
(continued)

|  |  |  |  |  |
|---|---|---|---|---|
|  | 1. | Mediation Requires Neutrality | | 17 |
|  | 2. | District Court Disregarded Neutrality Requirements under Federal Law | | 19 |
| C. | | THE DISTRICT COURT ERRED IN HOLDING THAT THE FAILURE OF FAULKNER AND FISH TO DISCLOSE WAS INSUFFICIENT GROUNDS FOR SETTING ASIDE THE TAINTED FINAL JUDGMENT UNDER RULE 60(B)(3) | | 21 |
|  | 1. | The District Court Erred In Failing to Set Aside the Judgment Pursuant to Rule 60(b)(3) | | 21 |
|  | 2. | The Court Erred in Holding that Faulkner and Fish did not Breach a Duty to Disclose | | 22 |
|  |  | a. | The Breaches of the Duty to Disclose | 22 |
|  |  |  | (1) Faulkner Breached the Duty to Disclose | 22 |
|  |  |  | (2) Mr. Melsheimer and Other Fish Attorneys Breached the Duty to Disclose | 24 |
|  |  | b. | The District Court Ignored the Failures to Disclose | 24 |
|  | 3. | CEATS Was Deprived of the Opportunity to Fully and Fairly Present Its Case | | 25 |
| D. | | THE DISTRICT COURT ERRED IN RELYING ON *LILJEBERG v. HEALTH SERVICES ACQUISITION CORP.* FOR A PROPOSITION FOR WHICH IT DOES NOT STAND AND IN FAILING TO SET ASIDE THE TAINTED FINAL JUDGMENT UNDER RULE 60(B)(6) | | 28 |
|  | 1. | The Law Surrounding Rule 60(b)(6) | | 28 |
|  | 2. | The District Court Applied Inconsistent Standards throughout Its Opinion | | 28 |
|  |  | a. | Faulkner's Relationship Created a Risk of Injustice in this Case | 30 |
|  |  | b. | Faulkner's Relationship Created a Risk of Injustice in Other Cases | 32 |

# TABLE OF CONTENTS
## (continued)

**Page**

        c.    Faulkner's Relationship Created a Risk to Public Confidence ............................................................. 34

E.    THE DISTRICT COURT ERRED BY FAILING TO CONSIDER OR REFER TO THE UNREBUTTED EXPERT OPINIONS OF CEATS' EXPERT WITNESS, DAVID HRICIK ...................................................................... 35

    1.    Expert Testimony Standard ....................................... 36

    2.    The District Court Abused Its Discretion by Effectively Excluding Reliable and Relevant Expert Testimony ............... 37

        a.    Mr. Hricik's Testimony Was Reliable ........................... 38

        b.    Mr. Hricik's Testimony Was Relevant, and Consideration of His Testimony Would Have Prevented Errors in the District Court's Opinion .......... 39

CONCLUSION ................................................................................. 40

CERTIFICATE OF SERVICE ............................................................ 42

CERTIFICATE OF COMPLIANCE ................................................... 43

ADDENDUM .................................................................................. 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam Technologies Intern. S.A. de C.V. v. Sutherland Global
Services, Inc.*,
729 F.3d 443 (5th Cir. 2013) ..........................................................................19

*In re Beazley Ins. Co.*,
No. 09-20005, 2009 WL 7361370 (5th Cir. May 4, 2009) ...................14, 19, 32

*Burleson v. Texas Dept. of Criminal Justice*,
393 F.3d 577 (5th Cir. 2004) ..........................................................................36

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
1 Fed. App'x 879 (Fed. Cir. 2001) ...................................................................16

*Cook Children's Medical Center v. New England PPO Plan of
General Consol. Mgmt., Inc.*,
491 F.3d 266 (5th Cir. 2007) ..........................................................................17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ........................................................................................36

*Flanagan v. Ahearn (In re Asbestos Litigation)*,
90 F.3d 963 (5th Cir. 1998) .......................................................................37, 38

*Fleming & Associates v. Newby & Tittle*,
529 F.3d 631 (5th Cir. 2008) .....................................................................37, 38

*Harrell v. DCS Equip. Leasing Corp.*,
951 F.2d 1453 (5th Cir. 1992) .........................................................................28

*Hesling v. CSX Transp., Inc.*,
396 F.3d 632 (5th Cir. 2005) ..............................................................21, 25, 26

*In re Joint E. & S. Dist. Asbestos Litig.*,
737 F. Supp. 735 (E.D.N.Y. 1990) ..............................................................19, 20

CASE PARTICIPANTS ONLY

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Karlseng v. Cooke*,
    346 S.W.3d 85 (Tex. App. Ct. 2011)
    ........................................................... 5, 6, 8, 9, 10, 13, 15, 22, 23, 24, 25, 31, 34

*In re Kensington Intern. Ltd.*,
    368 F.3d 289 (3d Cir. 2004) ................................................................19

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ..........................................................................37

*Liljeberg v. Health Services Acquisition Corp.*,
    486 U.S. 847 (1988) ...................................... 15, 17, 28, 29, 30, 31, 34

*Mims v. Stewart Title Guar. Co.*,
    590 F.3d 298 (5th Cir. 2009) ............................................................17

*Patterson v. Mobil Oil Corp.*,
    335 F.3d 476 (5th Cir. 2003) ......................................................16, 17

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ......................................................36, 37

*Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*,
    405 F.3d 36 (1st Cir. 2005) ..............................................................36

*Seven Elves, Inc. v. Eskenazi*,
    635 F.2d 396 (5th Cir. 1981) ............................................................28

**Statutes**

28 U.S.C. § 455 ....................................................................14, 18, 19, 29, 30

28 U.S.C. § 651 ..........................................................................18, 19, 32

28 U.S.C. § 653 ..........................................................................19, 20, 30

28 U.S.C. § 655 ..................................................................................30

vii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Other Authorities**

ABA MODEL STANDARDS OF CONDUCT FOR MEDIATORS STANDARD .............22, 31

Fed. R. Civ. P. 60(b) ............................................... 5, 6, 7, 15, 16, 17, 21, 22, 24, 25,
................................................................... 28, 29, 31, 32, 34, 35, 38, 39

Fed. R. Civ. P. 702 ..............................................................................36

JAMS MEDIATOR ETHICS GUIDELINES § I ...............................................23

MODEL RULE OF PROFESSIONAL CONDUCT § 1.7 ......................................37

TEX. MEDIATOR STANDARDS OF PRACTICE AND CODES OF
    ETHICS § 4 .........................................................................23

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, CEATS, Inc. ("CEATS") states as follows:

(a)     This case was previously before this Court on substantive issues in *Ceats, Inc. v. Continental Airlines, Inc.,* No. 2012-1614, 526 Fed. App'x 996 (C.A. Fed. April 26, 2013) (Chief Judge Randall R. Radar; Circuit Judge Alvin A. Schall; Circuit Judge Sharon Prost);

(b)     Appellant is not aware of any other case that will directly affect or be directly affected by this Court's decision in the pending appeal.

# STATEMENT OF JURISDICTION

The underlying lawsuit involved four claims for patent infringement, related to seven patents for airline seat technology. The district court had subject matter jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 28 U.S.C. §§ 2201 and 2202. The issues on this appeal stem solely from the district court's denial of Appellant's timely motion seeking relief from an order of dismissal pursuant to Fed. R. Civ. P. 60(b) based on the failure of Defendant-Appellee's counsel at Fish & Richardson ("Fish") and the court-appointed mediator, Judge Robert Faulkner ("Faulkner"), to disclose the facts related to and recounted in *Karlseng v. Cooke*, 346 S.W.3d 85 (Tex. App. Ct. 2011).

On June 28, 2013, the district court entered an order denying Appellant's motion for relief from the order of dismissal. (A0026-A0045). A ruling under Fed. R. Civ. P. 60(b) is final and immediately appealable pursuant to 28 U.S.C. § 1292. *Venture Indus. Corp. v. Autoliv ASP, Inc.,* 457 F.3d 1322, 1327 (Fed. Cir. 2006) (*citing Ashland Oil, Inc. v. Delta Prods. Corp.*, 806 F.2d 1031, 1032 (Fed. Cir. 1986)). Appellant timely filed notices of appeal to the Federal Circuit Court of Appeals on July 24, 2013. (A1116-A1118). Because the underlying lawsuit involves claims for patent infringement, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

2

## ISSUES FOR REVIEW

1.      Whether the district court erred in holding that the role of Judge Robert Faulkner as a mediator, as opposed to arbitrator or judge, obviated Faulkner's duty to disclose his apparent conflict of interest and appearance of partiality?

2.      Whether the district court erred in holding that the misconduct of Defendants-Appellees did not support setting aside the judgment?

3.      Whether the district court erred in applying inconsistent standards and contradicting itself with regard to the rules and standards applicable to a mediator in its application of *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988)?

4.      Whether the district court erred in its application of *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) in finding that the failure to disclose Faulkner's apparent conflict of interest did not create a risk of injustice to this and other cases and a risk to public confidence in the judicial process?

5.      Whether the district court erred by failing to consider or even reference the unrebutted expert testimony of Appellant's expert regarding the role of mediators in the judicial process, legal ethics and the controlling standards for mediators regarding conflicts, and expert opinions as to the application of Rule 60(b) to facts presented here?

# STATEMENT OF THE CASE

## A.  PRELIMINARY STATEMENT

This appeal implicates the very principles of partiality and fairness upon which our legal system is based.  The purpose of this appeal is to prevent a transformation of well-founded law requiring disclosures by mediators, attorneys, and parties of relationships creating an appearance of partiality.  Absent action by this Court, these required disclosures would become a nullity; the rules that require such disclosures would be rendered meaningless; and mediators, parties, and attorneys would be encouraged to keep secret preexisting relationships that destroy all notions of impartiality.  The district court's destruction of the disclosure requirement represents neither the letter nor spirit of the law.

This appeal arises from the failure on the part of Defendants-Appellees, their counsel, and the court-appointed mediator, Faulkner, to disclose a personal relationship between Faulkner and Defendants-Appellees' attorneys, which created an appearance of partiality.  The underlying lawsuit involved four claims of patent infringement that CEATS brought against Defendants, several airlines and online ticket sales companies, for software that allows customers to purchase a specific seat on an airplane or at a theater venue.  (A0315-A0812).

As part of the underlying suit, CEATS participated in court-ordered mediation, as required for all patent suits under the Local Rules for the Eastern

4

District of Texas. (A0214). Defendants recommended Faulkner as a mediator and CEATS agreed. (A0950; A0955-A0956). Over the course of the mediation, CEATS shared confidential information with Faulkner regarding the strength of its case, including specific failures of proof on the part of Defendants. (A0950-A0951; A0956; A0967-A0978). CEATS shared this information in confidence with who it believed was an impartial mediator and in a good faith effort to resolve the case. (A0950-A0951).

During the course of the settlement, unbeknownst to CEATS, Faulkner's relationship with Defendants' law firm, Fish, was the subject of litigation in the Texas Court of Appeals. (A0850-A0874; A0951). The issue was litigated in *Karlseng v. Cooke*, which involved a dispute over an arbitration award and fees that Faulkner awarded to Defendants' counsel in a different case. (A0850-A0874). Faulkner served as an arbitrator in that case without disclosing that he had an extensive personal relationship with a partner at Fish. (*Id.*)

CEATS only learned of the *Karlseng* case and Faulkner's relationship with Fish after the Court entered final judgment in the underlying case. (A0951-A0952; A0958). Based on the revelation, CEATS timely moved to set aside the final judgment under Rule 60(b)(3) and 60(b)(6) because of the failure to disclose the relationship between Faulkner and Fish. (A0310-A0312). The relationship and its nondisclosure created serious issues regarding Faulkner's neutrality and

5

impartiality in his role as mediator. (A0875-A0949). Specifically, it implicated the confidential information that CEATS shared with Faulkner – information that was later used by Defendants to address the specific failures of proof that CEATS had detailed to Faulkner. (A0956-A0957).

The district court denied CEATS' motion for relief primarily based on the fact that Faulkner's neutrality requirements as a mediator were different from the requirements imposed on an arbitrator or judge. (A0026-A0045). The district court's reasoning is contrary to rules governing mediators and to the foundation of impartiality and fairness upon which our judicial system is based.

### B. PROCEDURAL HISTORY

On March 19, 2013, CEATS filed a motion for relief from final judgment entered on March 27, 2012,[1] premised on the fact that Defendants' counsel and Faulkner failed to disclose a conflict of interest as expressed in *Karlseng v. Cooke*, 346 S.W.3d 85 (Tex. App. Ct. 2011). (A0310-A0312). CEATS moved pursuant to Fed. R. Civ. P. 60(b)(3) and 60(b)(6). (*Id.*). On June 2, 2013, CEATS asked Defendants to consent to a motion to amend the Docket Control Order to remove Faulkner as the court-ordered mediator after becoming aware of *Karlseng v. Cooke* and the facts addressed therein. (A0958; A0963-A0965). After Defendants refused to consent, CEATS filed a post-trial motion which was denied on August

---

[1]On March 21, 2012, the jury found CEATS' four asserted patent claims were infringed, but invalid. (A0294).

6

10, 2012. (A0026-A0045; A0958; A0963-A0965). On March 19, 2013, CEATS filed a Motion for Relief from Judgment under Rule 60(b)(3) and 60(b)(6). (A0312).

On June 28, 2013, the district court entered an order denying Appellant's motion for relief from judgment. (A0026-A0045). Appellant timely filed notices of appeal to the Federal Circuit Court of Appeals on July 23, 2013. (A0313; A1116-A1118).

## STATEMENT OF FACTS

### A.    BACKGROUND FOR THE UNDERLYING LAWSUIT

The underlying lawsuit involved four claims of patent infringement related to the following patents: U.S. Patent Nos. 7,454,361 ("the '361 patent"); 7,548,866; 7,548,869; 7,548,870; 7,660,728; 7,660,729; and 7,664,663. (A0315-A0812). The patents are all continuations flowing from the '361 patent. (*Id.*). The patents all relate to an electronic means by which people can select, over the Internet, the exact seat or seats they want for events, venues, or on airplanes. (*Id.*). The named Defendants include Continental Airlines, Inc., Alaska Airlines, Inc. ("Alaska"), Horizon Air Industries, Inc., Delta Air Lines, Inc., Jetblue Airways Corporation ("Jetblue"), United Airlines, Inc., Virgin America, Inc., U.S. Airways, Inc., Ticketmaster, LLC, Ticketsnow.com, Inc., Live Nation Worldwide, Inc., and Airtran Airways, Inc. ("Airtran") (collectively, "Defendants"). (*Id.*).

7

## B. THE UNDISCLOSED RELATIONSHIP BETWEEN FAULKNER AND DEFENDANTS' COUNSEL

### 1. Background to *Karlseng v. Cooke*

In 2007, prior to the filing of the underlying lawsuit, JAMS appointed Faulkner to arbitrate a partnership dispute between Robert Karlseng and H. Jonathan Cooke. (A0851). Cooke was represented by Fish. (*Id.*). In early 2008, Faulkner awarded Cooke approximately $22 million, including $6 million in attorney's fees for Fish. (*Id.*).

Following the award, in Texas state court, the parties litigated the issue of the failure of Faulkner and Fish to disclose the personal relationship that existed between Faulkner and Cooke's lead counsel at Fish. (A0851-A0852). The Texas Court of Appeals issued a first decision on the matter in 2009. (A0852). After the case was remanded to the trial court for additional discovery and fact-finding, the case returned to the Texas Court of Appeals, where Fish filed its appellate brief in January 2010. (*Id.*).

### 2. The Mediation of the CEATS' Underlying Patent Suit

In April 2010, CEATS brought the underlying lawsuit for patent infringement against the Defendants. (A0172). Defendants proceeded with a joint defense with Fish as defense counsel.[2] (A0955-A0956).

---

[2] As noted in CEATS' Motion for Relief from Judgment, Defendants JetBlue and Alaska were represented by Fish during the June 2011 mediation, over which Faulkner presided, but switched to different counsel on August 24, 2011. AirTran

8

The district court required the parties to propose a court-appointed mediator for court-ordered mediation. (A0213-A0214). In September 2010, the parties jointly proposed Faulkner. (A0213-A0214; A0950; A0956). At the time, CEATS was unaware of the relationship between Faulkner and Fish that was then being litigated in the *Karlseng v. Cooke* case. (A0950; A0956). Fish, on the other hand, was well aware of the issues regarding its undisclosed relationship with Faulkner. (A0850-A0874). At the time the parties proposed Faulkner to serve as the court-appointed mediator, Fish had fully briefed the *Karlseng* case in which Fish was accused of improperly failing to disclose its partner's personal relationship with Faulkner. (*Id.*). In spite of the fact that Fish was confronting this issue in *Karlseng*, neither Fish nor Faulkner disclosed the relationship to CEATS. (A0951-A0952; A0956-A0958). Unaware of the relationship, on September 28, 2010, the district court appointed Faulkner as the mediator and ordered the parties to complete mediation by June 30, 2011. (A0214).

During the course of the court-ordered mediation, both during and before the trial, CEATS shared confidential information with Faulkner, including CEATS' litigation and trial strategy regarding Defendants' failures of proof with respect to Expedia's prior art. (A0950-A951; A0956; A0967-A0978). CEATS was

---

was the only Defendant not represented by Fish during the mediation. Fish, however, opened for all of the Defendants.

completely unaware of the relationship between Faulkner and defense counsel when it made disclosures to Faulkner regarding its settlement position and case strategy.  (A0951-A0952; A0956-A0958).

After Faulkner's appointment as mediator, Mr. Melsheimer, who eventually acted as Defendants' lead trial counsel, defended Faulkner's arbitration award at oral argument before the Texas Court of Appeals in *Karlseng v. Cooke*.  (A0049; A0051; A0057; A0065; A0072; A0075; A0081-A0087; A0958).

### 3.    The Decision in *Karlseng v. Cooke*

On June 28, 2011, the Texas Court of Appeals issued its decision in *Karlseng v. Cooke*.  (A0850-A0874).   The court in *Karlseng* set aside the arbitration award due to the nondisclosure of the relationship between Faulkner and the Fish partner – a long and enduring personal relationship involving continuous emails, phone calls, visits, gifts, lavish dinners, and a $1,600 night out. *See Karlseng v. Cooke*, 346 S.W.3d 85 (Tex. App. 2011) (A0852-A0863; A0866-A0867).  CEATS attached and incorporated a copy of the *Karlseng* decision to its Motion for Relief from Judgment.  (A0850-A0874).  CEATS also requested that the district court take judicial notice of the facts set forth in the case.  (A0817).

### 4.    CEATS' Response to *Karlseng* Decision

The Texas Court of Appeals issued its decision while CEATS was mediating with Faulkner.  (A0850-A0874; A0950; A0956).  During the mediation sessions in

10

June 2011, CEATS privately shared sensitive information with Faulkner, including

its strategy for litigating the case.  (A0950-A951; A0956; A0967-A0978).  During

this time, CEATS reiterated the substance of its confidential mediation statement,

which was submitted to Faulkner on June 17, 2011, in which CEATS described

Defendants' failures of proof at that time regarding the Expedia prior art:

> [The material omitted from p. 11 contains a quote from Appellant's
> Confidential Mediation Statement.]

(A0972) (emphasis in original). CEATS also described its strategy for trial. (A0968-A0978). Appellant made these statements to Faulkner in confidence, completely unaware of his relationship with Defendants' counsel. (A0950-A0951; A0956-A0957).

Shortly after CEATS provided this confidential information to Faulkner, the Defendants shifted their discovery efforts to satisfy the specific failures of proof that CEATS identified in conferences with Faulkner. (A0957). For example, following the June 2011 mediation, Defendants subpoenaed Jeffrey Lubetkin (formerly of Expedia) for deposition in an attempt to authenticate the Expedia source code that they possessed. (*Id.*). Defendants also issued a subpoena to Microsoft, which resulted in the production of videotapes that were the centerpiece of the Defendants' case at trial. (*Id.*). Prior to the mediation with Faulkner, Defendants did not focus their discovery efforts on the issues of proof that CEATS identified for Faulkner. (*Id.*).

## C.     <u>JURY VERDICT AND POST-JUDGMENT RELIEF</u>

On March 13, 2012, the second day of trial, Faulkner arrived in Tyler, Texas where the trial was being held. (A0958). In chambers following the proceedings on March 13, 2013, the Court told the parties to mediate using Faulkner. (A0958). That evening, Faulkner shuttled back and forth between CEATS and the Defendants, the majority of whom were represented by Fish. (A0951; A0958). On

March 21, 2012, the jury found that CEATS' patents were infringed but found that CEATS' four patent claims were invalid. (A1116-A1118).

### D. CEATS LEARNS OF FAULKNER'S LAVISH RELATIONSHIP WITH FISH

Three days after the jury verdict, on March 24, 2012, CEATS' officers were forwarded news reports regarding tort claims that were brought against Fish, Faulkner, and JAMS arising from the *Karlseng v. Cooke* dispute. (A0951-A0952). CEATS' officers passed the report to CEATS' counsel, who then obtained a copy of the *Karlseng* opinion. (A0958). This was the first time that CEATS or any of its attorneys learned of the Texas Court of Appeals' opinion or any of the underlying facts concerning the undisclosed relationship between Fish, Mr. Melsheimer, and Faulkner. (A0951-A0952; A0958).

On June 2, 2012, CEATS asked Defendants to consent to a motion to amend the Docket Control Order to remove Faulkner as the court-appointed mediator based on the newly discovered facts surrounding the *Karlseng* opinion. (A0958; A0963-A0965). Defendants' counsel took the position that there was no violation of Faulkner's or Fish's duty to disclose. (*Id.*).

### SUMMARY OF ARGUMENT

On March 19, 2013, CEATS filed a motion for relief from final judgment premised on the fact that the nondisclosure of the relationship between the court-appointed mediator, Faulkner, and opposing counsel, as described in *Karlseng v.*

13

*Cooke*, tainted the district court proceedings. (A0310-A0312). On June 28, 2013, the district court entered an order denying Appellant's motion for relief from the final judgment. (A0026-A0045). In denying the motion, the district court abused its discretion in five ways:

*First*, the district court committed an error of law by holding that a different standard applies to the question of a court-ordered mediator's neutrality effect on proceedings as compared to the effect of a questionable neutrality on the part of a judge or arbitrator. As recognized by the Fifth Circuit, the federal statute authorizing alternative dispute resolution requires "a neutral third party" whether that party is a mediator or an arbitrator. *In re Beazley Ins. Co.*, No. 09-20005, 2009 WL 7361370, at *7 (5th Cir. May 4, 2009) (unpublished) *citing* 28. U.S.C. § 455 ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); *id.* § 651(a) (indicating that mediation and arbitration require a "neutral third party"); *id.* § 653 (describing the process for selecting "neutrals"). By holding that the neutrality requirements for court-ordered mediators are somehow different than arbitrators, the district court ignored the neutrality requirements of federal law and abused its discretion. This error ultimately altered the district court's analysis of CEATS' requested relief under Rule 60(b)(3) and 60(b)(6).

*Second*, the district court erred in holding that the failure of Fish and Faulkner to disclose their relationship and the facts surrounding *Karlseng v. Cooke* did not provide sufficient basis to grant relief from the tainted final judgment. The district court augmented the required showing under Rule 60(b)(3), stating that in addition to showing misconduct and prevention of the full and fair presentation of its case, CEATS failed to show "some limitation or misdirection or other result that limited its ability to present its case." This amounted to a departure from the rule and an abuse of discretion.

*Third*, the district court erred by relying on an inconsistent standard throughout its opinion. Initially, the district court held that Faulkner, as a mediator, was subject to a lower neutrality requirement than the requirement imposed on judges or arbitrators. In its analysis of CEATS' Rule 60(b)(6) motion, however, the district court applied to Faulkner the same standard applicable to arbitrators and judges. This internal inconsistency alone is error and demonstrates that the district court's previous lower neutrality requirement for Faulkner was erroneous.

*Fourth*, even applying the Rule 60(b)(6) standard for judges and arbitrators as outlined in *Liljeberg v. Health Services Acquisition Corp.*, the facts of this case warranted relief under Rule 60(b)(6). The facts presented in this case most certainly create a risk of injustice to the parties and to the public.

15

*Fifth,* the district court erred in failing to consider, or even reference, the unrebutted expert report of CEATS' expert witness, David Hricik.  Mr. Hricik is recognized as among one of the few experts of ethical issues arising in patent matters and a professor that teaches legal ethics and ADR at Texas law schools and elsewhere.  The district court's silence on Mr. Hricik's opinions amounts to an effective exclusion of his opinions from its consideration.  Considering the fact that Mr. Hricik's expert testimony was relevant and reliable, the district court's exclusion was an independent error.  However, the district court's exclusion of Mr. Hricik's opinions contributed to its erroneous conclusions of law regarding the impartiality of mediators and its application of Rule 60(b)(6).

## ARGUMENT

### A.  STANDARD OF REVIEW

The denial of a Rule 60(b) motion is a purely procedural question not unique to patent law, and therefore the Federal Circuit reviews the denial under the law of the regional circuit, in this case, the Fifth Circuit.  *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 Fed. App'x 879, 886 (Fed. Cir. 2001).  Under Fifth Circuit law, a district court's denial of a motion under Rule 60(b) is reviewed for an abuse of discretion.  *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 486 (5th Cir. 2003).  The first step of the abuse of discretion analysis is to determine *de novo* whether the trial court identified and applied the correct legal standard.  *Id.*

(quoting *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1091 (9th Cir. 2010). The second step is to determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record. *Id.* "Where a district court bases its legal analysis on an erroneous understanding of the governing law, it has abused its discretion." *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).

In this case, CEATS seeks review of its Motion for Relief from Judgment under Rule 60(b)(3) and Rule 60(b)(6) of the Federal Rules of Civil Procedure. The United States Supreme Court has noted the importance of Rule 60 in "promot[ing] confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 863.

**B. THE DISTRICT COURT ERRED IN HOLDING THAT THE NEUTRALITY AND DISCLOSURE REQUIREMENTS FOR MEDIATORS ARE SUBSTANTIALLY DIFFERENT THAN THOSE FOR ARBITRATORS OR JUDGES**

**1. Mediation Requires Neutrality**

The district court's attempt to distinguish Faulkner's obligations on the basis that he acted as a mediator, as opposed to judge or arbitrator, highlights the district court's abuse of discretion and application of the incorrect standard. "The prevailing definition of a mediator is '[a] neutral person who tries to help disputing parties reach an agreement." *Cook Children's Medical Center v. New England*

17

*PPO Plan of General Consol. Mgmt., Inc.*, 491 F.3d 266, 276 (5th Cir. 2007) (quoting Black's Law Dictionary, p. 1003 (8th ed. 2004) (holding that a mediator falls outside a reasonable interpretation of court-appointed expert because of the confidential relationship a mediator has with *both* parties); *see also* 1 Jay E. Grenig, Alternative Dispute Resolution § 4.1 (3d ed. 2005) ("Mediation involves a neutral third party – the mediator – whose function is to assist the parties in their negotiations"). Because a mediator's role requires both neutrality and confidence, a mediator such as Faulkner must not have even an appearance of partiality.

Specific to the background of this case, federal statute authorizes and requires district courts to adopt local rules permitting the use of alternative dispute resolution processes in civil actions. 28 U.S.C. § 651. The relevant statute describes the types of alternative dispute resolution as follows:

> (a) Definition. -- For purposes of this chapter, an alternative dispute resolution process includes any process or procedure, other than an adjudication by a presiding judge, in which a **neutral third party** participates to assist in the resolution of issues in controversy, through processes such as early neutral evaluation, **mediation**, minitrial, and **arbitration** as provided in sections 654 through 658.

28 U.S.C. § 651(a) (emphasis added). The neutrality requirements apply to mediation and arbitration. *See id.*; *see also* 28 U.S.C. § 653(b) (requiring courts to adopt rules "relating to the disqualification of neutrals (including, where appropriate, disqualification under section 455 of this title, other applicable law, and professional responsibility standards").

18

The Fifth Circuit has recognized that the strictures of 28 U.S.C. § 455 apply to mediators in much the same manner as judges or arbitrators. *See In re Beazley Ins. Co.*, No. 09-20005, 2009 WL 7361370, at *7 (5th Cir. May 4, 2009) (citing 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); 28 U.S.C. § 651(a) (indicating that mediation requires a "neutral third party"); 28 U.S.C. § 653 (describing the process for selecting "neutrals"); *see also Adam Technologies Intern. S.A. de C.V. v. Sutherland Global Services, Inc.*, 729 F.3d 443 (5th Cir. 2013). Other courts have had similar holdings. *In re Kensington Intern. Ltd.*, 368 F.3d 289 (3d Cir. 2004); *In re Joint E. & S. Dist. Asbestos Litig.*, 737 F. Supp. 735, 739-42 (E.D.N.Y. 1990) (holding generally that a mediator's ethical obligations are no less than those of a judge). Despite the clarity of the neutrality requirements for mediators, the district court attempted to carve out a distinction for mediators as compared to arbitrators, a distinction that is legally and factually erroneous.

### 2. District Court Disregarded Neutrality Requirements under Federal Law

Despite the requirements of federal statutes and recognition on the part of the Fifth Circuit that mediators are subject to the same neutrality standards as arbitrators, the district court carved out a distinction for Faulkner without reference to any authority. The district court stated:

19

> **Finally, Plaintiff's attempt to equate the role of a mediator with that of a judge or arbitrator is not convincing. Plaintiff insists that the distinction between a mediator and a judge or a mediator and an arbitrator is "superficial"** (Doc. No. 1060 at 13). But an arbitrator and a judge wield substantial power over the parties that a mediator does not. They determine what evidence may be admitted, establish the scope of trial, and may even serve as the final fact finder. **It is exactly this authority that makes disclosures of conflicts of interest or the appearance of conflict critical.** *See, e.g. Karlseng*, 346 S.W.3d at 97 ("It is beyond any question that an arbitrator has a duty of disclosure. Such a duty is predicated upon the enormous power, responsibility, and discretion vested in the arbitrator and the very limited judicial review of the arbitrator's decisions.") **The same is not immediately true of a mediator, even one appointed by the Court.**

(A0037). The Court then cited to Appendix H of the Local Rules for the Eastern District of Texas to illustrate the difference between mediators and arbitrators. (A0038). Appendix H states only that "Mediation is a private process in which an impartial third party, the mediator, facilitates communication and negotiation and promotes voluntary decision making by the parties to the dispute." (*Id.*). The Local Rule does nothing to limit the neutrality or impartiality requirements imposed by federal statute. Further, nothing in the rule serves to distinguish a mediator's duty to disclose a potential conflict, lack of neutrality, or appearance of bias.

The distinction that the district court attempted to inject into Section 455, Section 653(a), relevant case law, and its own Local Rules is not persuasive as it is a departure from the statutory and case authority. Relying on this dubious

20

distinction as a schema for its Rule 60 analysis, the Court made erroneous conclusions on the relief available to CEATS under Rule 60(b)(3) and Rule 60(b)(6).

As this distinction is a departure from precedent and the plain text of the federal statute, the Court abused its discretion in holding that a mediator is subject to a less strict neutrality requirement. If the district court's distinction is accepted by this Court, the precedent requiring full disclosure and impartiality by mediators would be rendered a nullity. The district court's erroneous distinction also contributed to errors of law in the district court's analysis of Rule 60(b)(3) and (b)(6).

### C. THE DISTRICT COURT ERRED IN HOLDING THAT THE FAILURE OF FAULKNER AND FISH TO DISCLOSE WAS INSUFFICIENT GROUNDS FOR SETTING ASIDE THE TAINTED FINAL JUDGMENT UNDER RULE 60(B)(3)

#### 1. The District Court Erred In Failing to Set Aside the Judgment Pursuant to Rule 60(b)(3)

Rule 60(b)(3) provides that the court may relieve a party from a final judgment for "misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). A party making a Rule 60(b)(3) motion must establish two things: (1) that the adverse party engaged in misconduct, which must be proven by clear and convincing evidence; and (2) that this misconduct prevented the moving party from fully and fairly presenting its case. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir.

2005). The Fifth Circuit has recognized that Rule 60(b)(3) "**does not require that the information withheld be such that it can alter the outcome of the case**." *Id.* (emphasis added). Instead, the rule "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Id.* The rule "is remedial and should be liberally construed." *Id.*

### 2. The Court Erred in Holding that Faulkner and Fish did not Breach a Duty to Disclose

Both Faulkner and attorneys from Fish failed to disclose their relationship and the facts underlying the *Karlseng* case. (A0951-A0952; A0956-A0958). This nondisclosure is not disputed. The failure to disclose prevented CEATS from fully and fairly litigating its claims and gave Defendants unfair advantage in defending the claims. (A0957). Nonetheless, the district court held that CEATS failed to satisfy either of the two required showings for relief under Rule 60(b)(3).

#### a. The Breaches of the Duty to Disclose

##### (1) Faulkner Breached the Duty to Disclose

Faulkner breached his duty to disclose his relationship with Defendants' law firm and the underlying facts of *Karlseng*. His failure to make this disclosure amounts to a breach of his obligations under the Texas Mediator Standards of Practice and Code of Ethics, the Federal Mediator & Conciliatory Service Mediator Codes of Conduct, and JAMS' rules. *See* ABA MODEL STANDARDS OF CONDUCT FOR MEDIATORS STANDARD III.C (providing that a mediator is required

to "disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to him and could reasonably be seen as raising questions about [his] impartiality"); JAMS MEDIATOR ETHICS GUIDELINES § I ("A mediator should understand that all parties understand and agree to … all parties' relationship to the mediator."); *Id.* § V ("A mediator should disclose any information that reasonably could lead a party to question the mediator's impartiality"); TEX. MEDIATOR STANDARDS OF PRACTICE AND CODES OF ETHICS § 4 ("prior to commencing mediation, the mediator shall make full disclosure of any known relationships with their parties or their counsel that may affect or **give the appearance of affecting the mediator's neutrality. A mediator shall not serve in the matter if a party makes an objection to the mediator based upon a conflict or perceived conflict**") (emphasis added). The district court benefited not only from the wealth of rules, practice guidelines, and standards that were presented but also from CEATS' expert who submitted a report regarding the obligation of mediators to disclose perceived conflicts. (A0875-A0949).

Based on these standards, Faulkner, as a neutral mediator, should have disclosed the facts of the *Karlseng* case. The facts of the case plainly affect the appearance of Faulkner's neutrality and impartiality. Under all of the standards identified above, Faulkner should have disclosed the relationship, whether it

affected his neutrality or not. His failure to do so is misconduct that satisfies the first prong of Rule 60(b)(3).

### (2) **Mr. Melsheimer and Other Fish Attorneys Breached the Duty to Disclose**

Defendants' attorneys at Fish, including Thomas Melsheimer, the attorney tasked with defending both the arbitration award in *Karlseng* and Fish's failure to disclose the relationship with Faulkner in the present case, were obligated to disclose the facts related to *Karlseng v. Cooke*. No attorney at Fish disclosed the existence of the *Karlseng* case or its underlying facts. (A0951-A0952; A0956-A0958). CEATS' expert opined that Mr. Melsheimer failed to comply with his obligations through this nondisclosure. (A0898-A0901). Likewise, Fish as a firm, having extensively litigated allegations of wrongdoing, and losing, in state court, neglected a similar obligation to disclose. (*Id.*).

### b. **The District Court Ignored the Failures to Disclose**

The district court ignored these failures to disclose and erroneously held that no misconduct occurred. Despite recognizing that "[f]rom a professional standpoint, Faulkner likely hoped that the *Karlseng* award would be upheld" the district court somehow concluded that "neither the opinion nor the facts surrounding the case establish a relationship requiring disclosure." (A0034). The relationship that the district court held need not be disclosed included a long and enduring personal relationship involving continuous emails, phone calls, visits,

24

gifts, lavish dinners, and a $1,600 night out. (A0852-A0863; A0866-A0867). Nonetheless, the Court held that neither Fish nor Faulkner had a duty to disclose. The district court's holding that the relationship between Faulkner and Fish did not require disclosure is erroneous and an abuse of the district court's discretion. (A0034). If there ever was a case where disclosure is required, this is that case. A finding to the contrary would render the disclosure requirements meaningless.

### 3. CEATS Was Deprived of the Opportunity to Fully and Fairly Present Its Case

Nondisclosure on the part of Fish and Faulkner prevented CEATS from fully and fairly presenting its case because it provided confidential information regarding the strength of its case to a mediator with an undisclosed conflict. Had Fish or Faulkner acknowledged their relationship or the facts underlying *Karlseng*, CEATS would have had the opportunity to object to Faulkner's appointment as mediator or provide its informed consent. (A0952). CEATS will never know what the outcome of the case would have been had Fish and Faulkner made the proper disclosures. But a change in outcome of the case is not the test under Rule 60(b)(3). Rule 60(b)(3) "does not require that the information withheld be such that it can alter the outcome of the case." *Hesling*, 396 F.3d at 641. Rather, Rule 60(b)(3) "is aimed at judgments which were **unfairly obtained**, not at those which are factually incorrect" *Id.* (emphasis added).

25

Defendants unfairly obtained the judgment in this case because, through their nondisclosure, they subjected CEATS to an unfair process that no objective observer would perceive as impartial. (A0901-A0904). By failing to disclose the apparent effect on Faulkner's neutrality, Defendants denied CEATS the opportunity to make an informed decision about whether it should mediate with Faulkner or seek a different mediator.

In this regard, this case differed substantially from *Hesling v. CSX Transp., Inc.*, on which the district court relied. As the district court stated, in *Hesling*, the prevailing party was found to have withheld evidence that was requested by the losing party. *Hesling*, 396 F.3d at 642. Although the prevailing party's explanation for not disclosing the documents was "wholly unpersuasive and somewhat dubious," the court found that the misconduct did not prevent the movant from fully and fairly presenting its case because the withheld documents addressed an issue that was preempted by federal law. *Id.*

Unlike the defendant in *Hesling*, Defendants and Faulkner did not withhold documents related to a claim that was precluded as a matter of law. Here, Defendants and Faulkner withheld information that tended to show that the court-appointed mediator was not neutral. This withheld information necessarily impacts the fairness of the process. Believing the mediator was impartial, CEATS provided confidential information, and specifically Defendants' failures of proof,

26

to the mediator. Defendants then shifted their discovery strategy to specifically address the failures of proof provided to the mediator by CEATS. Based on these objective facts and circumstances, the judgment was not "fairly obtained" and relief is justified under Rule 60(b)(3).

The district court recognized that this was the issue, but the court imposed a higher burden on CEATS than that outlined in the applicable case law. Specifically, the district court stated:

> Plaintiff claims the following: It would not have mediated before Judge Faulkner; Plaintiff would not have disclosed confidential information to Judge Faulkner; Plaintiff may have reached settlement with some of the Defendants; Defendants may not have addressed failures of proof that Plaintiff mentioned to Judge Faulkner; and Plaintiff might have prevailed at trial. <u>Plaintiff need not show that the outcome of the trial would have been different if the disclosures were made.</u> *Dias v. Methodist Hospital*, 46 F.3d 492, 496 (5th Cir. 1995). <u>But Plaintiff must show some limitation or misdirection or other result that limited its ability to present its case.</u> It has failed to do so.

(A0037) (emphasis added). Without any citation or further explanation for its augmented version of Rule 60(b)(3), the court denied relief. The district court cited the correct rule, acknowledged the basis for relief, and at the last moment imposed the additional requirement that CEATS "show some limitation or misdirection or other result that limited its ability to present its case." (*Id.*). This departure from the rule without explanation amounts to an abuse of discretion.

D.    **THE DISTRICT COURT ERRED IN RELYING ON**
     ***LILJEBERG V. HEALTH SERVICES ACQUISITION CORP.***
     **FOR A PROPOSITION FOR WHICH IT DOES NOT STAND**
     **AND IN FAILING TO  SET ASIDE THE TAINTED FINAL**
     **JUDGMENT UNDER RULE 60(B)(6)**

  1.    **The Law Surrounding Rule 60(b)(6)**

Rule 60(b)(6), sometimes referred to as a catch-all provision, permits the

court to set aside a final judgment for "any other reason that justifies relief."  Fed.

R. Civ. P. 60(b)(6).  Rule 60(b)(6) is not limited to any specific circumstance or

condition for relieving a party from judgment, but rather addresses any

"extraordinary" scenario not covered by the rest of Rule 60(b)'s provisions.

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988).

"Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a

particular case when relief is not warranted by the preceding clauses" of Rule

60(b).  *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992)

(emphasis added).  Accordingly, Rule 60(b)(6) "should be liberally construed in

order to do substantial justice."  *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401

(5th Cir. 1981).

  2.    **The District Court Applied Inconsistent Standards**
        **throughout Its Opinion**

As a starting point, the district court applied an inconsistent standard with

regard to Rule 60(b)(6), thereby contradicting its own previous holding.  Although

the district court initially held that mediators are subject to a different and lowered

28

neutrality requirement than arbitrators and judges, the district court applied factors from *Liljeberg* which relate specifically to the disqualification requirements for judges and arbitrators. By applying an internally inconsistent standard, the district court committed an error as a matter of law. This alone is sufficient grounds for reversal.

The district court further erred in its application of *Liljeberg* to facts present here. As noted by the United States Supreme Court and the district court, "The Rule does not particularize the factors that justify relief," but the Supreme Court has "previously noted that it provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Liljeberg*, 286 U.S. at 863-64. Thus, there is no specific test or factor that determines whether relief is available under Rule 60(b)(6).

Nonetheless, the Supreme Court has recognized that "in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider [1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." *Id.* at 864 (emphasis added). Despite holding that the neutrality and disclosure requirements of a mediator are less than those imposed on an arbitrator or judge, the district court chose to apply the above-cited standard for violations of § 455(a), which

presumably only applies to arbitrators and judges. *See* 28 U.S.C. § 455(a) (disqualification of a justice, judge, or magistrate judge in situations where his impartiality might be reasonably questioned); *see also* 28 U.S.C. § 655(b)(2) (importing the disqualification standards under § 455 to arbitrators).[3]  Considering the eagerness with which the district court created a distinction between mediators on one hand and arbitrators and judges on the other, it seems the district court would have applied that distinction consistently throughout its analysis.  It did not.

Even though under the district court's own analysis the rules for analyzing disqualification under Section 455 would not necessarily apply to Faulkner as a mediator, the three considerations identified by the court in *Liljeberg* all weigh in CEATS' favor.

### a. Faulkner's Relationship Created a Risk of Injustice in this Case

The first factor that the district court considered was the risk of injustice to the present case.  (A0039).  Although the district court acknowledged that Faulkner, as a court-appointed mediator, was bound by the Model Standards of Conduct for Mediators as adopted in the Local Rules, the court did not discuss this standard as it applies to this case.  Under the applicable rules, a mediator must

[3]Although 28 U.S.C. § 653(b) allows district courts to issue rules relating to the disqualification of "neutrals" (a term encompassing both mediators and arbitrators), including where appropriate disqualification under section 455, section 655 specifically imports disqualification standards for arbitrators.

disclose "all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality." ABA MODEL STANDARDS OF CONDUCT FOR MEDIATORS STANDARD III.C.

After citing the rules for mediators, the district court proceeded to attempt to distinguish *Liljeberg* from the present case on two grounds. First, the district court held that unlike the judge in *Liljeberg*, who sat on the board of trustees for a third-party university that was in negotiations with the defendant at the time of the trial, Faulkner did not have a fiduciary interest in the outcome of *Karlseng* or the present case. Nothing in *Liljeberg* or in any other case cited by the district court serves to limit the applicability of Rule 60(b)(6) to situations in which the mediator or judge has a "fiduciary interest in the case before him." The Court ignored the fact that Faulkner, as mediator, occupied a position of confidence and neutrality with CEATS, which was called into serious question by his history with opposing counsel as illustrated in *Karlseng* case. This relationship created serious questions about Faulkner's neutrality and the confidence with which CEATS entrusted him.

Second, the district court again attempted to distinguish Faulkner from case precedent and rules based on the fact that he was a mediator, not a judge. (A0042). The Court stated:

> Unlike the judge in *Liljeberg*, Judge Faulkner did not exercise control over the presentation of the case. He did not make evidentiary

31

> rulings.  He did not compose or influence the jury instructions.  He did not direct attorneys on time or form of any other matters pertaining to trial.  Judge Faulkner's only impact on the trial was that it happened at all (since the case did not settle).

(*Id.*).  As stated above, the district court relied on a distinction that does not

necessarily exist.  But, the district court's analysis ignored the fact that as a court-

appointed mediator, Faulkner gained access to confidential information regarding

the strengths and weaknesses of CEATS' case and CEATS' trial strategy.  The fact

that there are real questions regarding the risk that this information was released to

Defendants' counsel is sufficient to demonstrate a risk of injustice in this case.

(A0903).

> ### b. Faulkner's Relationship Created a Risk of Injustice in Other Cases

Absent action by this Court, the decision of the district court will have the

effect of eviscerating every statute and rule that requires the neutrality of court-

ordered mediators.  This will undoubtedly impact the disclosures (or

nondisclosures) of mediators in future cases.

As stated above, federal law mandates the neutrality of mediators, the same

as it does for arbitrators or other "neutrals" responsible for alternative dispute

resolution proceedings.  *See* 28 U.S.C. § 651(a); *see also In re Beazley Ins. Co.*,

No. No. 09-20005, 2009 WL 7361370, at *7 (5th Cir. May 4, 2009) (unpublished).

The district court recognized, at the very least, that the ABA Model Standards of

Conduct for Mediators as adopted in the Local Rules for the Eastern District of Texas require that mediators disclose "all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality." (A0039) (quoting ABA Model Standards of Conduct for Mediators Standard III.C). The district court also noted that the Texas ethics rules for mediators require disclosure of "any known relationships [that] may affect or give the appearance of affecting the mediator's neutrality." (A0040) (quoting TEX. MEDIATOR STANDARDS OF PRACTICE AND CODE OF ETHICS § 4).

Despite recognizing the existence of these rules, the district court found that Faulkner's relationship with Fish attorneys, including the sharing of lavish dinners and gifts, would not impact the appearance of his neutrality in this case. If the district court's ruling is allowed to stand, the rules and standards requiring full disclosure will be rendered meaningless and will only discourage against full disclosure in future cases. If there ever was a case where disclosure was required, it is the present case. If disclosure is not required here, no future litigant will be required to make disclosures, thereby eviscerating the disclosure requirement and creating a true risk for injustice in other cases. The district court abused its discretion in not so finding.

### c.    Faulkner's Relationship Created a Risk to Public Confidence

The district court erroneously held that there was no risk to public confidence in the judicial process because Faulkner was a mediator and not an arbitrator or judge. (A0043). As stated above, this error infected the court's analysis of Rule 60(b)(3) and (b)(6) alike. Contrary to the district court's holding, the Supreme Court has stated, "The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." *Liljeberg*, 486 U.S. at 869 (quoting *PUC of D.C. v. Pollak*, 343 U.S. 451, 466-467 (1952)).

Here, the risk to public confidence is two-fold. First, the relationship between Faulkner and attorneys at Fish was not disclosed. Second, the fact that that relationship was currently being litigated in Texas state courts was also undisclosed. When the *Karlseng* case eventually came to CEATS' attention, there was no longer a risk to public confidence in the judicial proceedings because that confidence had already been undermined. In an effort to resolve the case, CEATS shared confidential information with a mediator who it believed to be a neutral.

Rule 60(b)(6) offers the relief necessary to remedy the deeply problematic handling of the mediation and ultimately CEATS' claims. Although the appearance of partiality on the part of a mediator presents an issue somewhat different from that addressed in Rule 60(b)(1) through (b)(5), the catch-all

34

provision contained in Rule 60(b)(6) would have allowed the Court to grant the necessary relief. The Court chose not to do so because of an underlying misunderstanding regarding the neutrality requirements of mediators – particularly those appointed by the Court and required in patent cases under the Local Rules. Faulkner's appearance to the public is not one of neutrality. (A0903). Instead, it is an appearance of partiality based on a long and enduring personal relationship involving continuous emails, phone calls, visits, gifts, lavish dinners, and a $1,600 night out. The district court abused its discretion in finding that this longstanding relationship does not create a very real risk to the public's confidence in the impartiality and fairness of the judicial system.

### E.    THE DISTRICT COURT ERRED BY FAILING TO CONSIDER OR REFER TO THE UNREBUTTED EXPERT OPINIONS OF CEATS' EXPERT WITNESS, DAVID HRICIK

The district court erred by failing to consider or reference the unrebutted expert report of CEATS' expert, David Hricik. The failure to consider Mr. Hricik's opinions regarding the effect of Faulkner's conflicts and the application of Rule 60(b)(6) was a clear error. The residual effects of this error permitted the district court to misapply the ethical rules for mediators and misconstrue the standard for Rule 60(b)(6) as discussed above.

### 1.  <u>Expert Testimony Standard</u>

The district court's silence regarding the declaration of CEATS' expert appears to have been an implicit rejection of CEATS' expert evidence.  *Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*, 405 F.3d 36, 39 (1st Cir. 2005) (finding that although district court did not explicitly rule on a motion to exclude plaintiff's expert testimony, the fact that it did not refer to the expert report in its summary judgment decision implied a rejection of the plaintiff's expert evidence). Similarly, such a ruling is subject to review for abuse of discretion.  *See id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Currier v. United Techs. Corp.*, 393 F.3d 246, 251 (1st Cir. 2004)); *see also Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 583 (5th Cir. 2004); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court provided a non-exhaustive, non-exclusive framework for determining whether expert testimony is admissible under Rule 702 of the Federal Rules of Evidence.  There, the Court mandated that trial courts act as "gate-keepers," making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly was applied to the facts in issue.  *Id.* at 592-93.

36

"In short, expert testimony is admissible only if it is both relevant and reliable." *Pipitone*, 288 F.3d at 244.

"This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Id.* (citing *Kumho Tire Co.*, 526 U.S. 137). The district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire. Co.*, 526 U.S. at 152. Within this framework, district courts are permitted – and often do – allow expert testimony specifically on the issue of legal ethics, professional responsibility, and disqualification. *See e.g., Flanagan v. Ahearn (In re Asbestos Litigation)*, 90 F.3d 963, 977-78 (5th Cir. 1998) (admitting testimony from experts on legal ethics and professional responsibility to determine whether class counsel had impermissible conflicts of interest under Model Rule of Professional Conduct § 1.7); *see also Fleming & Associates v. Newby & Tittle*, 529 F.3d 631 (5th Cir. 2008) (allowing expert witness to provide testimony on business and professional ethics, corporate governance, corporate auditing, and public disclosures).

### 2. The District Court Abused Its Discretion by Effectively Excluding Reliable and Relevant Expert Testimony

The district court's disregard of and failure to reference Mr. Hricik's expert report in its opinion, thereby effectively excluding his expert testimony from

37

consideration, was an abuse of discretion.  Mr. Hricik's declaration provided
unrebutted expert testimony regarding the role of mediators in the judicial process,
legal ethics regarding conflicts, and expert opinions as to the application of Rule
60(b) to facts presented here.  (A0875-A0949).

### a.  Mr. Hricik's Testimony Was Reliable

Neither the district court nor the Defendants challenged the reliability of
Mr. Hricik's expert testimony on the subject of legal ethics and professional
responsibility.  (*See* A0026-A0045).  In fact, the district court failed to mention or
reference the unrebutted report at all.  (*Id.*).  As discussed above, courts regularly
allow expert testimony regarding legal ethics and professional responsibility.  *See
e.g., Flanagan v. Ahearn (In re Asbestos Litigation)*, 90 F.3d 963, 977-78 (5th Cir.
1998); *Fleming & Associates v. Newby & Tittle*, 529 F.3d 631 (5th Cir. 2008).

Mr. Hricik was qualified to testify as an expert on ethical issues regarding
the mediation in this case.  Not only has he litigated patent cases and taught legal
ethics at Texas law schools, but he is recognized as one of the few experts on
ethical issues arising in patent cases and has testified as an expert on ethical issues
in other patent cases.  (A0877).  Additionally, Mr. Hricik has chaired ethics
committees in both the ABA and AIPLA and served on the Texas bar committee
responsible for the Texas Disciplinary Rules of Professional Conduct.  (*Id.*).

Here, as there was no challenge to the reliability of expert testimony on the subject of Mr. Hricik's testimony or objection to Mr. Hricik's professional qualifications, the district court had no legitimate basis for ignoring completely this expert testimony. Nonetheless, because of the district court's silence and complete disregard for the testimony, Mr. Hricik's opinions were excluded.

> **b.** **Mr. Hricik's Testimony Was Relevant, and Consideration of His Testimony Would Have Prevented Errors in the District Court's Opinion**

The district court's *sub silentio* exclusion of Mr. Hricik's expert opinions was an abuse of discretion because had the district court considered Mr. Hricik's opinions, the district court would have avoided its erroneous application of the standards for mediators and Rule 60(b)(6). Mr. Hricik's declaration addressed the district court's erroneous conclusion that mediators are bound by a different standard of impartiality. (*Compare* A0888 *to* A0037). Specifically, Mr. Hricik addressed the standards for "Mediator Impartiality," "Mediator Conflicts of Interest," "Mediator Disclosures," and "Mediator Confidentiality." (A0888-A0889). Applying these standards, Mr. Hricik reached the conclusion that Faulkner violated his duties to CEATS, and that Faulkner's relationship with Fish (and the circumstances surrounding the case) gave rise to the appearance of the misuse of CEATS' confidences. (A0896-A0897; A0913). Based on these conclusions, Mr. Hricik opined that relief from judgment was appropriate.

(A0913).  Thus, Mr. Hricik's analysis, conclusions, and opinions were directly relevant to the issues before the district court.  The district court, however, ignored Mr. Hricik's opinions despite its reliability and relevance.  This alone was error. The district court's error is highlighted by the fact that had the district court given the briefest consideration to Mr. Hricik's opinions, it would have avoided the errors identified in this brief.  At the very least, Mr. Hricik's declaration required the district court to hold an evidentiary hearing and address such testimony in its findings and conclusions.

## **CONCLUSION**

For the foregoing reasons, Appellant CEATS, Inc. respectfully requests that this Court: (1) reverse the district court's order denying Appellant's motion for relief from the final judgment; (2) enter judgment in Appellant's favor; (3) in the alternative, reinstate the underlying case and remand the matter to the district court for an evidentiary hearing on the issues raised in Appellant's Motion for Relief from Final Judgment or a new trial on the merits; and (4) for all other relief that this Court deems just and appropriate.

Dated:  November 22, 2013

Respectfully submitted,

By: s/ Dean A. Dickie
Dean A. Dickie
dickie@millercanfield.com
Ryan C. Williams
williamsr@millercanfield.com
MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.
225 West Washington Street, Suite 2600
Chicago, Illinois 60606
Telephone: 312.460.4200
Facsimile: 312.460.4288

George L. Hampton IV
ghampton@hamptonholley.com
Colin C. Holley
cholley@hamptonholley.com
HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625
Telephone: 949.718.4550
Facsimile: 949.718.4580

*Counsel for Plaintiff-Appellant Ceats, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2013, I caused the foregoing **Non-Confidential Opening Brief of Plaintiff-Appellant** to be served via Federal Express Standard Overnight Delivery upon all counsel of record.

Mark A. Lemley, Esq.  
Clement Roberts, Esq.  
DURIE TANGRI LLP  
217 Leidesdorff Street  
San Francisco, CA 94111  
    Telephone: 415.362.6666  
    Fax: 415.236.6300  

*Counsel for Defendants-Appellees Continental Airlines, Inc., Alaska Airlines, Inc., Delta Air Lines, Inc., Horizon Air Industries, Inc., Jetblue Airways Corporation, Live Nation Worldwide, Inc., Ticketmaster, LLC, Ticketsnow.Com, Inc., United Airlines, Inc., US Airways, Inc., Virgin America, Inc.*

Massimo Ciccarelli, Esq.  
James Michael Heinlen, Esq.  
THOMPSON & KNIGHT LLP  
1722 Routh Street, Suite 1500  
Dallas, TX 75201  
    Telephone: 214.969.1599  
    Fax: 214.999.9085  

*Counsel for Defendant-Appellant Airtran Airways, Inc.*

I also certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system:

Clerk of Court  
United States Court of Appeals for the Federal Circuit  
717 Madison Place, NW  
Washington, D.C. 20439  

s/ Dean A. Dickie  
Dean A. Dickie  
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.  
225 West Washington Street, Suite 2600  
Chicago, IL 60606  
Telephone: 312.460.4227  
Facsimile: 312.460.4288  
*Counsel for Plaintiff-Appellant Ceats, Inc.*

42

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing NON-CONFIDENTIAL OPENING BRIEF OF PLAINTIFF-APPELLANT:

1.   Complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).  This brief contains 8,595 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b).  Microsoft Word 2003 was used to calculate the word count; and

2.   Complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  This brief has been prepared in proportionally-spaced typeface using Microsoft Word 2003 in 14-point Times New Roman type style.

Dated:  November 22, 2013

s/ Dean A. Dickie
_____
Dean A. Dickie
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
225 West Washington Street, Suite 2600
Chicago, IL  60606
Telephone:  312.460.4227
Facsimile:  312.460.4288

*Counsel for Plaintiff-Appellant Ceats, Inc.*

43

## **ADDENDUM**

| Date Filed | Docket Number | Description | Page Numbers |
|---|---|---|---|
| 3/27/2012 | 976 | Final Judgment | Add. 1 – Add. 2 |
| 6/28/2013 | 1101 | Order Denying Motion For Relief From Final Judgment | Add. 3 - Add. 22 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **CEATS, INC.** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:10cv120** |
| | § | **PATENT CASE** |
| **CONTINENTAL AIRLINES, ET AL.** | § | |
| | § | |
| **Defendants** | § | |

**FINAL JUDGMENT**

This action was tried by a jury with the undersigned presiding, and the jury has reached a verdict.

It is **ORDERED** that:

- Defendants Continental Airlines, Inc. ("Continental"), AirTran Airways, Inc. ("AirTran"), Alaska Airlines, Inc. ("Alaska"), Horizon Air Industries, Inc. ("Horizon"), Delta Air Lines, Inc. ("Delta"), JetBlue Airways Corporation ("JetBlue"), United Air Lines, Inc. ("United"), Virgin America, Inc. ("Virgin") and US Airways, Inc. ("US Airways") are found to have infringed:
  - Claim 1 of U.S. Patent No. 7,454,361;
  - Claim 8 of U.S. Patent No. 7,548,866; and
  - Claim 5 of U.S. Patent No. 7,660,728;

- Defendants Ticketmaster, LLC ("Ticketmaster") and Live Nation Worldwide, Inc. ("Live Nation") are found to have infringed:
  - Claim 1 of U.S. Patent No. 7,454,361;
  - Claim 8 of U.S. Patent No. 7,548,866 and
  - Claim 5 of U.S. Patent No. 7,548,869;

- Defendant TicketsNow.com, Inc. ("TicketsNow") is found to have infringed Claim 5 of U.S. Patent No. 7,548,869.

1

It is further **ORDERED** that the following claims are found to be invalid:

- Claim 1 of U.S. Patent No. 7,454,361;
- Claim 8 of U.S. Patent No. 7,548,866;
- Claim 5 of U.S. Patent No. 7,660,728;
- Claim 5 of U.S. Patent No. 7,548,869.

Accordingly, it is **ORDERED**, **ADJUDGED**, and **DECREED** that Plaintiff CEATS, Inc. take nothing from Defendants Continental, AirTran, Alaska, Horizon, Delta, JetBlue, United, Virgin, US Airways, Ticketmaster, Live Nation and TicketsNow and that all pending motions are **DENIED** as **MOOT**.

It is further **ORDERED**, **ADJUDGED**, and **DECREED**, that Defendants' costs of court should be taxed against Plaintiff CEATS, Inc. The parties are directed to the Standing Order Regarding Bill of Costs on the Court's website.

      **So ORDERED and SIGNED this 27th day of March, 2012.**



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| CEATS, INC. | § | |
| | § | |
| | § | |
| v. | § | Case No. 6:10-cv-120 |
| | § | |
| | § | |
| CONTINENTAL | § | |
| AIRLINES, INC., et al. | § | |

## ORDER DENYING MOTION FOR RELIEF FROM FINAL JUDGMENT

Now before the Court is Plaintiff's Motion for Relief from Final Judgment under Federal Rule of Civil Procedure 60(b) (Doc. No. 1060, 1091). This case raises the issue of whether a mediator's failure to make certain disclosures during mediation justifies overturning a jury verdict. After review of the facts and the applicable law, the Court finds that it does not. Accordingly, Plaintiff's motion is DENIED.

## I. BACKGROUND

Robert Faulkner, a retired federal magistrate judge, now serves as an arbitrator and mediator with JAMS in Dallas. In February 2008, he entered a $22 million arbitration award in a partnership dispute. *Karlseng v. Cooke*, 346 S.W.3d 85, 86, 100 (Tex. App.—Dallas 2011, no pet.). That case is not factually related to the case pending before this Court.

Following the *Karlseng* arbitration, the losing parties challenged the arbitration award in state court, alleging that Judge Faulkner and Brett Johnson, a partner at the law firm Fish & Richardson and the attorney for the prevailing party, improperly failed to disclose their personal and professional relationship. *Id.* at 87. The state district court upheld the arbitration award, but the appellate court remanded the case for additional discovery and findings by the court. *Id.*

Following remand, the parties conducted discovery and the state district court issued its findings, again upholding the arbitration award entered by Judge Faulkner. *Id.* The case was appealed again. *Id.*

While *Karlseng* was still pending before the state appellate court, Plaintiff CEATS, Inc. filed this patent infringement case against several Defendants. The Defendants filed counterclaims, alleging the relevant patents are invalid. Although this case is not factually related to *Karlseng*, the Dallas Fish & Richardson office represents several Defendants in this case. In September 2010, upon a joint request by the parties, the Court appointed Judge Faulkner as mediator.

On November 30, 2010, Thomas Melsheimer, the managing partner of Fish & Richardson's Dallas office, argued before the state appellate court in support of the *Karlseng* arbitration award. At the time, Mr. Melsheimer was not involved in this federal patent litigation. On June 28, 2011, the state appellate court overturned the arbitration award in *Karlseng v. Cooke*, finding that Judge Faulkner and Mr. Johnson failed to make required disclosures about their relationship. The opinion was released in the midst of the formal mediation sessions held by Judge Faulkner in this case on June 21, 28, and 30, 2011. During this time, there were no disclosures regarding the pendency of *Karlseng* or the underlying facts.

Nine months later, in March 2012, this case was tried to a jury before the Hon. Judge Leonard Davis. Mr. Melsheimer served as the lead trial counsel for several of the Defendants. During the trial, Judge Davis again ordered the parties to mediation before Judge Faulkner. Mr. Melsheimer did not participate in the mediation. The parties did not reach a settlement.

At the conclusion of the trial in this case, the jury found that all defendants had infringed all asserted claims but also found each claim invalid (Doc. No. 971). The Court heard and denied

five post-judgment motions asking the court to overturn the verdict (Mem. Op. & Order, Aug. 10, 2012, ECF No. 1057). Plaintiff then promptly filed its Motion for Relief from Final Judgment under Rule 60(b).

On February 22, 2012, prior to the trial in this case, Mr. Johnson and Fish & Richardson were named in a civil action related to the facts surrounding *Karlseng*. Original Petition at 1, *Patten v. Johnson*, No. DC-12-02006 (192nd Dist. Ct., Dallas County, Tex. Feb. 22, 2012). Judge Faulkner and JAMS were added as Defendants on May 23, 2012, two months after trial concluded in this case, but before the Court ruled on the post-judgment motions. First Amended Petition at 1, *Patten v. Johnson*, No. DC-12-02006 (192nd Dist. Ct., Dallas County, Tex. May 23, 2012). Plaintiff first learned of the facts surrounding *Karlseng* after reading about the civil action naming Judge Faulkner. The state Court dismissed the civil case on November 19, 2012 for lack of jurisdiction. Final Judgment at 1, *Patten v. Johnson*, No. DC-12-02006 (298th Dist. Ct., Dallas County, Tex. Nov. 19, 2012).

Plaintiff filed a notice of appeal as to the substantive issues on August 13, 2012 (Doc. No. 1058). The only issue remaining before the Court in this case is whether Plaintiff is entitled to relief from the judgment under Rule 60(b).[1]

## II. JURISDICTION

The parties have not challenged the Court's jurisdiction to hear this motion, but the Court

---

[1] Plaintiff filed a request for hearing on its motion for Rule 60(b) relief (Doc. No. 1089). Plaintiff did not specifically request an evidentiary hearing.

It is "within the sound discretion of the district court" whether to hold an evidentiary hearing on a Rule 60(b) motion. *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989).

The parties in this case have thoroughly briefed the issues, attaching affidavits, expert reports, and other relevant documents. In view of the record before the Court, the relevant underlying facts are not in dispute. The only questions remaining are whether the facts warrant relief under Rule 60(b). Accordingly, the Court finds a hearing unnecessary. *See McCorvey v. Hill*, 385 F.3d 846, 850 (5th Cir. 2004) (upholding district court's denial of a Rule 60(b) motion without conducting a hearing when "[a]n evidentiary hearing would have served no useful purpose in aid of the court's analysis").

has an independent duty to evaluate its jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Generally, "a perfected appeal divests the district court of jurisdiction." *Winchester v. United States Atty. for S.D. of Tex.*, 68 F.3d 947, 950 (5th Cir. 1995). But in this case, the Federal Circuit recently affirmed the judgment on the substantive issues (Doc. Nos. 1098, 1099). Thus, the appeal is no longer pending and jurisdiction squarely rests with the district court. *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 329 (5th Cir. 2004) (discussing the district court's limited jurisdiction "while the appeal is pending").

## III. STANDARD

Federal Rule of Civil Procedure 60(b) sets forth several grounds to vacate a final judgment, including when an opposing party commits fraud, misrepresentation, or misconduct. Fed. R. Civ. P. 60(b)(3). The Rule also includes a catch-all provision that allows a court to vacate a judgment "for any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). The catch-all provision is mutually exclusive with the other grounds set forth in Rule 60(b). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988).

"By its very nature, the rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) (quoting *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970)). "[T]he rule should be liberally construed in order to do substantial justice." *Seven Elves*, 635 F.2d at 401. But the Court may only vacate a judgment "upon such terms as are just." Fed. R. Civ. P. 60(b).

## IV. ANALYSIS

Plaintiff moves the Court to vacate the judgment under both Federal Rule of Civil

Procedure 60(b)(3) and Rule 60(b)(6). Plaintiff alleges that both defense counsel and Judge Faulkner failed to disclose the nature of their relationship in view of the ongoing *Karlseng* case. Plaintiff alleges that counsel's failure disclose is a violation of Rule 60(b)(3) (misconduct by a party) and Judge Faulkner's failure to disclose is a violation of Rule 60(b)(6) (catch-all provision). For the reasons discussed more fully below, the Court finds that relief is not warranted under either provision.

### a. Rule 60(b)(3): Misconduct of an Opposing Party

To prevail under Rule 60(b)(3), Plaintiff must prove by clear and convincing evidence that (1) Defendants engaged in fraud or misconduct, and (2) that Defendants' conduct prevented Plaintiff from fully and fairly presenting its case. *Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). Plaintiff need not prove that the case would have turned out differently but for the misconduct. "The purpose of the rule is to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect." *Diaz v. Methodist Hospital*, 46 F.3d 492, 496 (5th Cir. 1995).

Plaintiff sets forth three undisclosed facts as the bases for its claim. Plaintiff argues that the following should have been disclosed: (1) Judge Faulkner's relationship with Mr. Johnson, a Dallas-based Fish & Richardson partner; (2) the facts surrounding *Karlseng* and the appellate court's opinion; and (3) Fish & Richardson's role defending the *Karlseng* arbitration award, and particularly Mr. Melsheimer's role arguing the case before the state appellate court. Plaintiff further argues that these non-disclosures tainted the entire judicial process in this case, thus preventing Plaintiff from fully and fairly presenting its case. Plaintiff affirmatively states that if defendants had disclosed the facts surrounding *Karlseng*, "it never would have mediated before Judge Faulkner against Fish & Richardson generally and Mr. Melsheimer specifically" and it

"would not have disclosed its confidential litigation and trial strategy to Judge Faulkner" (Doc. No. 1060, at 10).

Defendants respond that they did not have a duty to disclose the underlying facts of *Karlseng* (including Mr. Johnson's relationship with Judge Faulkner), the state court's opinion, or Mr. Melsheimer's involvement in arguing *Karlseng*. Defendants further argue that Plaintiff was not prevented from fully and fairly presenting its case. The Court agrees that the Fish & Richardson attorneys, including Mr. Melsheimer, did not violate any requirement to disclose the facts surrounding *Karlseng*, including Mr. Melsheimer's role defending the arbitration award.[2]

### 1. Judge Faulkner's Relationship with Mr. Johnson

Non-disclosure of the relationship between Judge Faulkner and Mr. Johnson was the basis for setting aside the arbitration award in *Karlseng*. Plaintiff argues that this relationship also should have been disclosed in this case.

In *Karlseng,* the court found "substantial evidence" that Judge Faulkner and Mr. Johnson had a "personal, social, and professional relationship." 346 S.W.3d at 98. The relationship spanned more than a decade and included expensive private meals, emails, several business phone calls each year, gifts, attendance at sporting events, and conversations about career goals and vacation plans. *Id.* at 98–99. The court also found significant that Judge Faulkner and Mr. Johnson suspended their interactions while the *Karlseng* mediation was pending. *Id.* at 99–100. Also, at the beginning of the arbitration proceedings, Judge Faulkner and Mr. Johnson acted as though they were strangers. *Id.* at 99. The court found that in view of the entire record, Judge Faulkner and Mr. Johnson shared a "direct, personal, professional, social, and business relationship" that would create the appearance of partiality to a reasonable observer. *Id.* at 100.

---

[2] Defendants also argue that they did not have a duty to disclose because the facts surrounding *Karlseng* were widely publicized. Because the Court dismisses the motion on other grounds, the Court does not reach this issue.

Since Mr. Johnson was directly involved in the *Karlseng* arbitration, the appellate court did not address whether his relationship with Judge Faulkner should be imputed to the entire Fish & Richardson firm (for example, even if Mr. Johnson had not been involved in the arbitration). *Id.*

It is undisputed that Mr. Johnson was never involved in this case. Furthermore, Plaintiff clarifies in its reply that it "never argued that relief from judgment is required simply because there was an undisclosed personal relationship between Faulkner and Brett Johnson" (Doc. No. 1068 at 2). Likewise, the Court finds no authority to impute the relationship between Judge Faulkner and Mr. Johnson to the entire Fish & Richardson firm. Thus, there was no requirement to disclose the Johnson–Faulkner relationship, independent of *Karlseng* (addressed in the next section).

### 2. The *Karlseng* Case

Plaintiff also alleges that the Fish & Richardson attorneys improperly failed to disclose the circumstances surrounding *Karlseng* and the state court's opinion overturning the arbitration award.

An attorney is held to high standards regarding his conduct within judicial and related proceedings. *See* Local Rule AT-3(D) ("A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity."). As noted by Plaintiff's expert, among the obligations imposed on attorneys are the following: (1) an attorney must not "engage in conduct that is prejudicial to the administration of justice," ABA Model Code of Prof'l Conduct Rule 8.4(d) (2011); (2) an attorney must not "knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law," Tex. Disciplinary R. Prof'l Conduct 8.04(a)(6), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar. R. art. X, §9) and ABA Model Code of Prof'l

Conduct Rule 8.4(f) (2011); (3) when representing a client, a lawyer must not act in way that designed solely to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person, Tex. Disciplinary R. Prof'l Conduct 4.04(a) and ABA Model Code of Prof'l Conduct Rule 4.4(a) (2011); (4) an attorney must not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation," Tex. Disciplinary R. Prof'l Conduct 8.04(a)(3) and ABA Model Code of Prof'l Conduct Rule 8.4(c) (2011); (5) a lawyer must disclose to the court any fact necessary to avoid assisting a criminal or fraudulent act, Tex. Disciplinary R. Prof'l Conduct 3.03(a)(2); and (6) a lawyer must withdraw his representation if continued representation will result in violation of a disciplinary rule, Tex. Disciplinary R. Prof'l Conduct 1.15(a)(1) and ABA Model Code of Prof'l Conduct Rule 1.16(a)(1) (2011). The JAMS mediation agreement also required the parties to disclose any past or present relationship that would create the appearance of a conflict of interest. JAMS Mediation Agreement § II (2005), *available at* http://www.jamsadr.com/adr-forms/ ("The mediator, each party, and counsel confirm that they have disclosed any past or present relationship or other information that a reasonable person would believe could influence the mediator's impartiality and that no conflict of interest or appearance of a conflict of interest exists.").

The Court finds that the Fish & Richardson attorneys in this case did not violate any of their ethical or disclosure obligations by not disclosing the existence of the *Karlseng* case, the underlying facts, or the appellate court's decision. The Court notes that *Karlseng* was factually unrelated to this one. Furthermore, Judge Faulkner was not a party and did not have an interest in *Karlseng*. Also, the Fish & Richardson attorneys involved in *Karlseng* were defending an award in favor of their client, not in favor of Judge Faulkner. They did not represent Judge Faulkner. They did not represent someone aligned with Judge Faulkner. They did not "virtually represent"

Judge Faulkner.

From a professional standpoint, Judge Faulkner likely hoped that the *Karlseng* award would be upheld. But neither the opinion nor the facts surrounding the case establish a relationship requiring disclosure. Furthermore, the Court notes that neither party has pointed to an analogous case where disclosure was required of so tangential a relationship between a mediator and the parties to mediation. Thus, the facts surrounding *Karlseng* did not create a duty to disclose under the applicable ethical standards.

### 3. Mr. Melsheimer's Role

Finally, Plaintiff accuses defendant of improperly failing to disclose Mr. Melsheimer's relationship with Judge Faulkner via *Karlseng*. According to Plaintiff, Mr. Melsheimer—the managing partner at Fish & Richardson's Dallas office—should have disclosed the facts surrounding *Karlseng* and his involvement. Mr. Melsheimer argued before the Dallas Court of Appeals in favor of the arbitration award entered by Judge Faulkner in *Karlseng*. Plaintiff does not allege that Mr. Melsheimer and Judge Faulkner had a relationship independent of *Karlseng*.[3]

The Court finds that Mr. Melsheimer—like the other Fish & Richardson attorneys—did not violate any of the ethical obligations listed above or the more general duty to act with professional integrity. Plaintiff makes allegations specific to Mr. Melsheimer because of his direct involvement with *Karlseng*. But this is not enough to impose on Mr. Melsheimer an additional duty to disclose.

Mr. Melsheimer's only involvement in *Karlseng* was to argue on behalf of the arbitration

---

[3] Plaintiff's expert claims that Mr. Melsheimer "engaged in the same type of conduct as Mr. Johnson" (Doc. No. 1060-2 at 26). But Plaintiff and its expert do not seem to suggest that Mr. Melsheimer shared a relationship with Faulkner similar to the Faulkner–Johnson relationship criticized in *Karlseng*. But out of an abundance of caution, the Court notes that the relationship between Mr. Johnson and Faulkner spanned several decades and involved a personal and professional dynamic. *See Karlseng*, 346 S.W.3d at 98. There is no evidence to support a similar relationship between Faulkner and Mr. Melsheimer.

award—issued by Judge Faulkner—in favor of Fish & Richardson's client. If Mr. Melsheimer had simply defended the factual and legal conclusions supporting the arbitration award, it is without question that disclosure would not be required. But *Karlseng* involved allegations of impropriety by Judge Faulkner. Thus, Plaintiff's expert suggests that Judge Faulkner had an interest in the outcome: It reflected on his reputation as a fair and unbiased arbitrator (Doc. No. 1060-2 at 3, 11, 17, 22). The Court also notes that Judge Faulkner was a fact witness in *Karlseng*. *See Karlseng*, 346 S.W.3d at 96.

But Mr. Melsheimer's role in *Karlseng* was to defend an award in favor of the Fish & Richardson client. He did not represent Judge Faulkner, actually or virtually. He did not represent a client in whom Judge Faulkner had a pecuniary or fiduciary interest. Also, there is no evidence that he coordinated with Judge Faulkner in arguing to uphold the *Karlseng* opinion. As with the other Fish & Richardson attorneys, Mr. Melsheimer did not have a duty to disclose the facts surrounding *Karlseng* or the appellate court's decision.

The Court also finds significant the timing of Mr. Melsheimer's appearance in this case. Mr. Melsheimer was the only attorney involved in both cases. He filed his appearance in this case in December 2011, six months after the initial mediation with Judge Faulkner and more than a year after he argued *Karlseng* before the appellate court. By the time Mr. Melsheimer filed his appearance and began billing hours in this case, *Karlseng* had concluded. Therefore, any relationship—had one requiring disclosure ever existed—no longer existed.

### 4. Plaintiff's Opportunity to Fully and Fairly Present Its Case

Even if Mr. Melsheimer and the other Fish & Richardson attorneys had improperly failed to disclose the facts surrounding *Karlseng*, Plaintiff still must prove that it was prevented from fully and fairly presenting its case. *Diaz v. Methodist Hospital*, 46 F.3d 492, 496 (5th Cir. 1995).

Plaintiff has not met its burden on this element.

As an initial matter, the Court does not accept Plaintiff's suggestion that it need not satisfy the second element of Rule 60(b)(3). Relying on *Karlseng* and on *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), Plaintiff claims that non-disclosure compels Rule 60(b)(3) relief. According to Plaintiff, the non-disclosure taints "the integrity of the entire proceeding," including the judgment (Doc. No. 1060, at 13).

But neither *Karlseng* nor *Liljeberg* involved allegations under Rule 60(b)(3). In *Karlseng*, the state court evaluated the proceedings under the Texas arbitration statute, and *Liljeberg* involved a challenge under Rule 60(b)(6), the catch-all provision. Neither the Texas arbitration statute nor Rule 60(b)(6) includes the same elements as Rule 60(b)(3). Both cases provide guidance to the Court on the disclosure standard, but neither speaks to the specific remedial provision presented in Rule 60(b)(3).

The Fifth Circuit made clear a movant's need to satisfy the second element under Rule 60(b)(3) in *Hesling v. CSX Transportation, Inc.*. In *Hesling*, the prevailing party was found to have withheld evidence that was requested by the losing party. 396 F.3d 632, 642 (5th Cir. 2005) (criticizing the prevailing parties' "explanation for not disclosing the documents . . . [as] wholly unpersuasive and somewhat dubious"). Yet the Court found that relief was not appropriate under Rule 60(b)(3) because the withheld documents addressed an issue that was preempted by federal law. *Id.* at 641–42. Thus, the court held that the prevailing party's misconduct did not prevent the movant from fully and fairly presenting its case, precluding Rule 60(b)(3) relief. *Id.* at 642. Similarly, here, Plaintiff has failed to demonstrate how Fish's alleged failure to disclose a relationship with the appointed mediator prevented Plaintiff from fully and fairly presenting its case.

The Court also rejects as insufficient each of the possible outcomes claimed by Plaintiff—presumably in an attempt to show that its ability to present its case was undermined by the non-disclosure. Plaintiff claims the following: It would not have mediated before Judge Faulkner; Plaintiff would not have disclosed confidential information to Judge Faulkner; Plaintiff may have reached settlement with some of the Defendants; Defendants may not have addressed failures of proof that Plaintiff mentioned to Judge Faulkner[4]; and Plaintiff might have prevailed at trial. Plaintiff need not show that the outcome of the trial would have been different if the disclosure were made. *Diaz v. Methodist Hospital*, 46 F.3d 492, 496 (5th Cir. 1995). But Plaintiff must show some limitation or misdirection or other result that limited its ability to present its case. It has failed to do so.

Finally, Plaintiff's attempt to equate the role of a mediator with that of a judge or arbitrator is not convincing. Plaintiff insists that the distinction between a mediator and a judge or a mediator and an arbitrator is "superficial" (Doc. No. 1060 at 13). But an arbitrator and a judge wield substantial power over the parties that a mediator does not. They determine what evidence may be admitted, establish the scope of trial, and may even serve as the final factfinder. It is exactly this authority that makes disclosures of conflicts of interest or the appearance of a conflict critical. *See, e.g.*, *Karlseng*, 346 S.W.3d at 97 ("It is beyond any question that an arbitrator has a duty of disclosure. Such a duty is predicated upon the enormous power, responsibility, and discretion vested in the arbitrator and the very limited judicial review of the arbitrator's decisions."). The same is not immediately true of a mediator, even one appointed by the Court. The role of a mediator—and importantly, a mediator's authority over a case—is much

---

[4] Plaintiff claims that it does not accuse Faulkner of sharing its confidential information. The Court notes that nothing in the record suggests that Faulkner shared Plaintiff's confidential information with Defendants. Even Plaintiff will not commit itself to such an allegation. But Plaintiff clearly intended to suggest such a possibility. The Court notes that this is an egregious allegation that is completely unsupported by any facts before the Court.

more limited than that of a judge or an arbitrator. *See* Local Rule App. H ¶ II ("Mediation is a private process in which an impartial third party, the mediator, facilitates communication and negotiation and promotes voluntary decision making by the parties to the dispute.").

In this case, Plaintiff did not settle with Fish & Richardson's clients. (Plaintiff also failed to settle with Defendants represented by other firms.) Instead, the case ultimately went to trial, giving Plaintiff the fullest opportunity to present its case to the jury. A mediator's non-disclosure could, in some circumstances, limit a party's ability to fully and fairly present its case. But the Plaintiff failed to make that showing here.

### 5. Conclusion on Rule 60(b)(3) Relief

The Court finds that (1) the Fish & Richardson attorneys—including Mr. Melsheimer—did not violate a disclosure obligation related to the facts surrounding *Karlseng* or Fish & Richardson's representation of its client in that matter, and (2) Plaintiff has failed to demonstrate that it was prevented from fully and fairly presenting its case. Accordingly, Plaintiff's request for relief under Rule 60(b)(3) based on misconduct of an opposing party is DENIED.

### b. Rule 60(b)(6): The Catch-All Provision

Plaintiff also seeks relief under Rule 60(b)(6), which provides grounds to vacate a judgment "for any other reason justifying relief from the operation of the judgment." This provision only applies in "extraordinary circumstances." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988) ("The rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice, while also cautioning that it should only be applied in extraordinary circumstances." (citations and internal quotations omitted)). In assessing whether to vacate the judgment under 60(b)(6), the court

should consider (1) the risk of injustice in this case; (2) the risk of injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. *Id.* at 864.

As a threshold issue, Defendant argues that Plaintiff cannot proceed under Rule 60(b)(6) because the same facts support Plaintiff's Rule 60(b)(3) request for relief. Rule 60(b)(6) is mutually exclusive from the other five grounds for relief set forth in Rule 60(b). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). Defendants argue that Plaintiff relies on the same facts to support its request for relief under Rule 60(b)(3) and 60(b)(6). Plaintiff responds that its request for relief under Rule 60(b)(3) is based on the attorneys' alleged failure to disclose, while its request for relief under Rule 60(b)(6) is based on Judge Faulkner's alleged failure to disclose. The Court agrees that Plaintiff has asserted distinct bases for relief under the two provisions.

Although Plaintiff has set forth a distinct set of facts in support of its Rule 60(b)(6) claim, the facts are insufficient to support the requested relief. Considering each of the relevant factors, Plaintiff's request to vacate the judgment is without merit.

**1. The First *Liljeberg* Factor: The Risk of Injustice in this Case**

The first *Liljeberg* factor is the risk of injustice in this case. *Liljeberg*, 486 U.S. at 864. Plaintiff argues that Judge Faulkner improperly failed to disclose the facts surrounding *Karlseng*. Plaintiff further argues that this alleged failure to disclose tainted the entire process, including the judgment. According to Plaintiff, the remedy is to vacate the judgment.

As a Court-appointed mediator, Judge Faulkner was bound by the Model Standards of Conduct for Mediators. *See* Local Rules App. H. Under these rules, a mediator must disclose "all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality." ABA Model

Standards of Conduct for Mediators Standard III.C. Furthermore, the JAMS rules require that its mediators "disclose any information that reasonably could lead a party to question the mediator's impartiality." JAMS Mediator Ethics Guidelines, *available at* http://www.jamsadr.com/mediators-ethics/. The Texas ethics rules governing mediators also impose a disclosure requirement when "any known relationships . . . may affect or give the appearance of affecting the mediator's neutrality." Tex. Mediator Standards of Practice and Code of Ethics § 4, *available at* http://www.txmca.org/ethics.htm.

Plaintiff relies heavily on *Liljeberg v. Health Services Acquisition Corp.* In *Liljeberg*, the U.S. Supreme Court found that a presiding judge's failure to disclose a relationship with one of the parties compelled the Court to grant relief under Rule 60(b)(6). 486 U.S. 847, 861 (1988). The plaintiff in *Liljeberg* sought a declaration that it owned a hospital then under development. *Id.* at 852. While the case was pending, Defendant engaged in negotiations with Loyola University to purchase a site for the new hospital. *Id.* at 853. The presiding judge sat on Loyola's board of trustees. *Id.* at 855–56. Loyola's interest in the transaction was tied directly to the defendant's success in the litigation pending before the judge. *Id.* at 857. The judge conducted a bench trial and ruled in favor of the defendant. *Id.* at 855.

Based on these facts, the Supreme Court found that a reasonable observer would have questioned the judge's impartiality and have expected him to recuse himself. *Id.* at 861. The same reasonable observer standard applies to Judge Faulkner. *See, e.g.*, ABA Model Standards of Conduct for Mediators Standard III.C. But the facts in this case are drastically different than those present in *Liljeberg*. The judge in *Liljeberg* had a fiduciary interest in the case before him that disqualified him from hearing the case under the applicable statute. *See id.* at 867–68. He regularly attended board of trustee meetings when the hospital deal—a significant deal for the

university—was discussed. *Id.* at 865. One of these meetings occurred just days before the case was filed. *Id.* Although he regularly attended meetings, the judge missed the meeting held a week after the bench trial, while the case was still under advisement by the Court. *Id.* at 866. The university and the *Liljeberg* Defendant executed the sales contract while the case was pending before the judge, and the contract specifically referenced the pending litigation. *Id.* at 856–57, 866 n.13. When university correspondence reminded the judge of Loyola's pecuniary interest in the outcome of the case, the judge did not notify the parties of his fiduciary interest in the matter or recuse himself from the case as required by statute. *Id.* at 866–67. He also acted as the judge and final factfinder. *Id.* at 855.

The facts pertaining to Judge Faulkner's alleged nondisclosure are materially distinct from those in *Liljeberg*. Judge Faulkner did not have a personal or fiduciary interest in *Karlseng*. There is no evidence that Judge Faulkner participated in meetings directing the litigation in *Karlseng*. He had no authority to make or influence legal or factual rulings in this case. Finally, Judge Faulkner was not compelled by statute to disqualify himself from this case.

Having reviewed the disclosure obligations imposed on a mediator, and in view of the facts in this case—in contrast with those in *Liljeberg*—the Court does not find that a reasonably objective person would have expected Judge Faulkner to disclose the facts surrounding *Karlseng*. Because Judge Faulkner did not improperly fail to disclose, Plaintiff has not demonstrated a risk of injustice in this case.

Furthermore, even had Judge Faulkner improperly failed to disclose the facts surrounding *Karlseng*, relief under Rule 60(b)(6) is unwarranted. Despite Plaintiff's insistence to the contrary, the *Liljeberg* court did not rule that non-disclosure always compels Rule 60(b) relief. Instead, the Court held that "Rule 60(b)(6) relief is neither categorically available nor categorically

unavailable." *Id.* at 864. Instead, the Supreme Court evaluated the relevant factors, as the Court must do in this case.

Importantly, as to the first *Liljeberg* factor, Plaintiff has not satisfied the extremely high standard warranting relief under Rule 60(b)(6). Plaintiff "must show the initial judgment to have been manifestly unjust." *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 357 (5th Cir. 1993) (citation and internal quotations omitted). Rule 60(b)(6) "is a residual or catch-all provision to cover unforeseen contingencies—a means to accomplish justice under exceptional circumstances." *Id.* Plaintiff has made no attempt to satisfy this requirement. Instead, the Plaintiff clings to the belief that no further inquiry is necessary in the face of non-disclosure by a mediator (Doc. No. 1060 at 13). Unlike the judge in *Liljeberg*, Judge Faulkner did not exercise control over the presentation of the case. He did not make evidentiary rulings. He did not compose or influence the jury instructions. He did not direct attorneys on time or form or any other matters pertaining to the trial. Judge Faulkner's only impact on the trial was that it happened at all (since the case did not settle). A judgment based on a jury verdict, rather than the parties' agreement, is not "manifestly unjust" when it is the product of a full and fair jury trial. Such is the case here. Accordingly, the first *Liljeberg* factor weighs against Rule 60(b)(6) relief.

### 2. The Second *Liljeberg* Factor: The Risk of Injustice in Other Cases

The second factor under *Liljeberg* is the risk of injustice in other cases. *Liljeberg*, 486 U.S. at 864. Plaintiff has not presented evidence that denying the requested relief presents a risk of injustice in other cases. Plaintiff's briefing assumes that Rule 60(b) relief would vacate the judgment as to all Defendants, even as to those Defendants not represented by Fish & Richardson. Plaintiff's position is based on Mr. Melsheimer's presentation of a joint defense in the invalidity trial on behalf of all Defendants. The Court disagrees.

Page **17** of **20**

The jury's verdict of invalidity would likely remain in effect regardless of the Court's ruling on the pending motion. The evidence does not support vacating the judgment against AirTran Airways, Inc., who was never represented by Fish & Richardson. Presenting a shared defense in view of court-imposed time constraints (and not for purposes of mediation) does not place AirTran Airways on the same footing as those Defendants represented by Fish & Richardson. Thus, even if the Court vacated the judgment as to the Defendants represented by Fish & Richardson, the jury's invalidity finding would remain intact as to AirTran Airways. This would likely benefit all Defendants in this case as well as accused infringers in other cases. *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1349 (Fed. Cir. 2008) ("It is a firmly established principle that a judgment of patent invalidity in one case can collaterally estop the patent owner from contesting invalidity in a subsequent case, as long as the patent owner had a 'full and fair opportunity to litigate the validity of the patent' in the first case." (quoting *Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1379 (Fed. Cir. 1983)). Thus, Plaintiff has not shown how the judgment in this case poses a risk of injustice in other cases. Accordingly, this factor does not favor granting Rule 60(b)(6) relief.

### 3. The Third *Liljeberg* Factor: Public Confidence

As to the final factor, Plaintiff argues that Judge Faulkner's alleged failure to disclose undermines the public's confidence in the judicial process. Plaintiff indicates that as a court-appointed mediator, Judge Faulkner was no different than a judge or arbitrator. For the reasons discussed above, the Court does not agree. *See supra* pp. 12. A reasonable observer would appreciate the difference between a final decision maker—such as a judge or arbitrator—and a mediator, who "facilitates communication and negotiation and promotes voluntary decision making by the parties." Local Rules App. H.

Furthermore, *Karlseng* was unrelated to this case and focused on a relationship between Judge Faulkner and an attorney who was not involved in this case. Judge Faulkner was not a party in *Karlseng*. Thus, even if the nondisclosure was improper—which it was not—the facts do not suggest that a mediator's nondisclosure of these facts would undermine the public's confidence in the judicial system.

### 4. Conclusion on Rule 60(b)(6) Relief

As discussed above, the Court finds that the *Liljeberg* factors do not support vacating the judgment under Rule 60(b)(6). Importantly, the Court notes the following: (1) Judge Faulkner did not violate a disclosure obligation; (2) Plaintiff has not demonstrated that the judgment in this case was "manifestly unjust" or that "exceptional circumstances" exist; (3) the invalidity judgment would remain in effect for at least one Defendant, thus benefiting the accused infringers in this and other cases; and (4) the facts would not undermine the public's confidence. Accordingly, Plaintiff's motion for relief under Rule 60(b)(6) is DENIED.

## V. CONCLUSION

·    For the reasons discussed above, the Court DENIES Plaintiff's Motion for Relief from Final Judgment under Federal Rule of Civil Procedure 60(b) (Doc. No. 1060, 1091). Although this ruling is in favor of Defendants, the Court finds that Defendants have not demonstrated that cost-shifting measures are appropriate. Accordingly, Defendant's request for attorneys' fees is DENIED.

    **It is SO ORDERED.**

    **SIGNED this 28th day of June, 2013.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE