**2013-1529**

United States Court of Appeals
for the Federal Circuit

CEATS, INC.,

*Plaintiff-Appellant,*

*v.*

CONTINENTAL AIRLINES, INC., ALASKA AIRLINES, INC.,
HORIZON AIR INDUSTRIES, INC., DELTA AIR LINES, INC.,
JETBLUE AIRWAYS CORPORATION, UNITED AIR LINES, INC.,
VIRGIN AMERICA, INC., US AIRWAYS, INC., TICKETMASTER, LLC,
TICKETSNOW.COM, INC., and LIVE NATION WORLDWIDE, INC.,

*Defendants-Appellees,*

*and*

AIRTRAN AIRWAYS, INC.,

*Defendant-Appellee.*

*Appeal from the United States District Court for the Eastern District of
Texas in case no. 6:10-CV-120, Judge Michael H. Schneider*

**BRIEF OF DEFENDANTS-APPELLEES
CONTINENTAL AIRLINES, INC., ALASKA AIRLINES, INC.,
HORIZON AIR INDUSTRIES, INC., DELTA AIR LINES, INC.,
JETBLUE AIRWAYS CORPORATION, UNITED AIR LINES, INC.,
VIRGIN AMERICA, INC., US AIRWAYS, INC., TICKETMASTER, LLC,
TICKETSNOW.COM, INC., AND LIVE NATION WORLDWIDE, INC.**

DURIE TANGRI LLP
MARK A. LEMLEY (SBN 155830)
mlemley@durietangri.com
CLEMENT S. ROBERTS (SBN 209203)
croberts@durietangri.com
ZAC A. COX (SBN 283535)
zcox@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:     (415) 362-6666

*Attorneys for Defendants-Appellees
Continental Airlines, Inc., et al.*

January 21, 2014

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4(a)(1) and Federal Rule of Appellate

Procedure 26.1, counsel for Defendants-Appellees certifies the following:

1.    The full name of every party represented by us is:

    Continental Airlines, Inc. n/k/a United Airlines, Inc.;
    Alaska Airlines, Inc.;
    Horizon Air Industries, Inc.;
    Delta Air Lines, Inc.;
    JetBlue Airways Corporation;
    United Air Lines, Inc. n/k/a United Airlines, Inc.;
    Virgin America Inc.;
    US Airways, Inc.;
    Ticketmaster LLC.;
    TicketsNow.com, Inc.;
    Live Nation Worldwide, Inc.

2.    The name of the real party in interest (if the party named in the caption is not
    the real party in interest) represented by us is:

    Live Nation Entertainment, Inc. (for Ticketmaster LLC;
    TicketsNow.com, Inc.; and Live Nation Worldwide, Inc.)

3.    All parent corporations and any publicly held companies that own 10 percent
    or more of the stock of the party represented by us are:

    Continental Airlines, Inc. n/k/a United Airlines, Inc.'s parent company
    is United Continental Holdings, Inc., and United Continental
    Holdings, Inc. is a publicly held company that owns 100% of its
    stock.

    Alaska Airlines, Inc. is a wholly-owned subsidiary of Alaska Air
    Group, Inc. and no publicly held company owns 10% or more of
    Alaska Air Group, Inc.'s stock.

    Delta Air Lines, Inc. does not have a parent company, and no publicly
    held company owns 10% or more of its stock.

    Horizon Air Industries, Inc. is a wholly-owned subsidiary of Alaska
    Air Group, Inc. and no publicly held company owns 10% or more of
    Alaska Air Group, Inc.'s stock.

JetBlue Airways Corporation does not have a parent company. Deutsche Lufthansa AG is a publicly held company that owns 10% or more of its stock.

Live Nation Worldwide, Inc.'s ultimate parent company is Live Nation Entertainment, Inc. Liberty Media Corporation is a publicly held company that owns 10% or more of Live Nation Entertainment, Inc.'s stock.

Ticketmaster LLC's ultimate parent company is Live Nation Entertainment, Inc. Liberty Media Corporation is a publicly held company that owns 10% or more of Live Nation Entertainment, Inc.'s stock.

TicketsNow.com, Inc.'s parent company is The VIP Tour Company. The VIP Tour Company's parent company is Live Nation Entertainment, Inc. Liberty Media Corporation is a publicly held company that owns 10% or more of Live Nation Entertainment, Inc.'s stock.

United Air Lines, Inc. n/k/a United Airlines, Inc.'s parent company is United Continental Holdings, Inc., and United Continental Holdings, Inc. is a publicly held company that owns 100% of its stock.

As of December 9, 2013, American Airlines Group, Inc., a publicly traded company (NASDAQ: AAL), owns 100% of the stock of US Airways Group, Inc., which in turn owns 100% of the stock of US Airways. There is no publicly held corporation that owns more than 10% of the stock of American Airlines Group, Inc.

Virgin America Inc. has no parent company and no publicly held company owns 10% of more of its stock.

4. The names of all law firms and the partners or associates that appeared in the trial court or are expected to appear in this court for parties now represented by us are:

**Carl Edward Bruce** (bruce@fr.com)
**David Brandon Conrad** (conrad@fr.com)
**Andrew R. Graben** (graben@fr.com)
**Neil J. McNabnay** (mcnabnay@fr.com)
**Thomas M. Melsheimer** (melsheimer@fr.com)
**Britnee Marie Reamy** (reamy@fr.com)
Fish & Richardson – Dallas
1717 Main St., Suite 5000
Dallas, TX 75201
(214) 747-5070
Fax: (214) 747-2091

**John S Goetz** (jsg@fr.com)
**Karen Yeh** (formerly of)
Fish & Richardson – New York
601 Lexington Ave, 52nd Floor
New York, NY 10022
(212) 641-5070
Fax: (212) 258-2291

**Lauren Murphy Pringle** (formerly of)
Fish & Richardson – Wilmington
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 778-8474
Fax: (866) 825-6381

**Justin M. Barnes** (barnes@fr.com)
Fish & Richardson – Southern California
12390 El Camino Real
San Diego, CA 92130
(858) 678-5070
Fax: (858) 678-5099

**Jennifer Parker Ainsworth** (jainsworth@wilsonlawfirm.com)
**William Joseph Cornelius, Jr.** (wc@wilsonlawfirm.com)
Wilson Robertson & Cornelius PC
909 ESE Loop 323, Suite 400
P.O. Box 7339
Tyler, TX 75711-7339
(903) 509-5000
Fax: (903) 509-5092

**Charles Ainsworth** (charley@pbatyler.com)
**Robert Christopher Bunt** (rcbunt@pbatyler.com)
Parker Bunt & Ainsworth
100 E Ferguson, Suite 1114
Tyler, TX 75702
(903) 531-3535
Fax: (903) 533-9687

**Kirby Blair Drake** (kirby.drake@kk-llp.com)
**Casey Lee Griffith** (casey.griffith@kk-llp.com)
**Darin Michael Klemchuk** (darin.klemchuk@kk-llp.com)
**Kelly James Kubasta** (kelly.kubasta@kk-llp.com)
Klemchuk Kubasta LLP
8150 North Central Expressway, 10th Floor
Dallas, TX 75206
(214) 367-6000
Fax: (214) 367-6001

**Zac A. Cox** (zcox@durietangri.com)
**Mark A. Lemley** (mlemley@law.stanford.edu)
**Eugene Novikov** (formerly of)
**Clement S. Roberts** (croberts@durietangri.com)
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666
Fax: (415) 236-6300

**Jack Wesley Hill** (wh@wsfirm.com)
Ward & Smith Law Firm
PO Box 1231
1127 Judson Road, Suite 220
Longview, TX 75606
(903) 757-6400
Fax: (903) 757-2323

Dated: January 21, 2014

                           */s/ Mark A. Lemley*
                              Mark A. Lemley

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ........................................................................ I

STATEMENT OF RELATED CASES ............................................................. 1

STATEMENT OF ISSUES ............................................................................... 2

INTRODUCTION ............................................................................................. 3

STATEMENT OF THE CASE .......................................................................... 4

STATEMENT OF THE FACTS ....................................................................... 5

       A.    Mediation ........................................................................... 5

       B.    Trial ................................................................................... 6

       C.    The *Karlseng–Cooke* Case ............................................... 7

       D.    Thomas Melsheimer .......................................................... 8

       E.    Post-trial and Appeal ........................................................ 9

SUMMARY OF THE ARGUMENT .............................................................. 14

ARGUMENT ................................................................................................... 16

    I.    RELIEF FROM THE FINAL JUDGMENT
        PURSUANT TO RULE 60 IS INAPPROPRIATE ..................... 16

       A.    The District Court Properly Rejected CEATS's
            Rule 60(b)(3) Motion ...................................................... 16

            1.    The District Court Applied the Proper Law ............ 16

            2.    No Defendant nor Any Fish Attorney
                Engaged in Any Misconduct .................................... 18

            3.    CEATS Was Not in Any Way Limited
                From Fully and Fairly Presenting Its Case ............. 21

# TABLE OF CONTENTS (CONT'D)

4.    Judge Faulkner Owed No Duty Under Rule 60(b)(3) Because He Was Not a Party to This Case ................................................................ 23

5.    The District Court Properly Considered and Disregarded the Legal Testimony of CEATS's Expert ....................................................... 24

B.    The District Court Properly Rejected CEATS's Rule 60(b)(6) Motion ......................................................... 26

1.    CEATS Attempts to Salvage with Rule 60(b)(6) the Same Theory That Fails Under Rule 60(b)(3) ............................................................ 26

2.    The District Court Gave CEATS the Benefit of the Doubt in Applying a Higher Standard of Conduct Than the Law Warrants ................................................................. 28

3.    The Three *Liljeberg* Factors All Favor Allowing the Final Judgment to Stand .................... 30

    a.    CEATS Can Show No Injustice in This Case. ...................................................... 30

    b.    This Decision Poses No Risk in Other Cases. ................................................... 32

    c.    Nothing About Judge Faulkner's Conduct in This Case Undermines Public Confidence .......................................... 32

# TABLE OF CONTENTS (CONT'D)

**Page**

II.   THIS CASE IS MOOT BECAUSE THE PATENT CLAIMS IN SUIT HAVE BEEN FINALLY ADJUDGED INVALID .............................................................. 34

     A.   CEATS Knew All the Facts Relevant to This Appeal by June 4, 2012 ...................................................... 34

     B.   CEATS Elected Not to Raise Its Concerns to the District Court Until After Appealing the Case .................. 35

     C.   The Claims at Issue Are Irretrievably Invalid, So There Is No Live Patent to Litigate .................................... 37

     D.   CEATS's Tactical Decision Not to Timely Raise Its Challenge to the Mediator Has Rendered This Case Moot ........................................................................ 38

     E.   Alternatively, CEATS's Failure to Seek Relief Promptly in the District Court Disentitles It to Rule 60(b) Relief ............................................................. 41

     F.   The Impossibility of Awarding the Relief That CEATS Requests Underscores the Nonjusticiability of This Appeal ....................................... 41

CONCLUSION ................................................................................ 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir. 1997) ...............................................24

*Batts v. Tow-Motor Forklift Co.*,
66 F.3d 743 (5th Cir. 1995) ...............................................26

*Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*,
402 U.S. 313 (1971) ................................................... 39, 40

*Dean v. United States*,
556 U.S. 568 (2009) ...............................................28

*Edward H. Bohlin Co. v. Banning Co.*,
6 F.3d 350 (5th Cir. 1993) ........................................... 26, 31

*Fackleman v. Bell*,
564 F.2d 734 (5th Cir. 1977) ...............................................41

*Fiskar's, Inc. v. Hunt Mfg., Co.*,
279 F.3d 1378 (Fed. Cir. 2002) ...........................................41

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
721 F.3d 1330 (Fed. Cir. 2013) ...........................................38

*Friedman v. Dozorc*,
412 Mich. 1 (1981) ...............................................18

*Gonzalez v. Dep't of Transp.*,
551 F.3d 1372 (Fed. Cir. 2009) ...........................................28

*Hesling v. CSX Transportation, Inc.*,
396 F.3d 632 (5th Cir. 2005) ..................................... 17, 22

*In re Baxter Int'l, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012) ...........................................40

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*In re Solerwitz,*
  848 F.2d 1573 (Fed. Cir. 1988) ........................................................24

*In re Swanson,*
  540 F.3d 1368 (Fed. Cir. 2008) ........................................................40

*Karlseng v. Cooke* (*Karlseng I*),
  286 S.W.3d 51 (Tex. App. 2009) .........................................................8

*Karlseng v. Cooke* (*Karlseng II*),
  346 S.W.3d 85 (Tex. App. 2011) .........................................................8

*Klapprott v. United States,*
  335 U.S. 601 (1949) ........................................................................27

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.,*
  714 F.3d 1289 (Fed. Cir. 2013) ........................................................41

*Liljeberg v. Health Servs. Acquisition Corp.,*
  486 U.S. 847 (1988) ................................................................. passim

*Patterson v. Mobil Oil Corp.,*
  355 F.3d 476 (5th Cir. 2003) .................................................... 17, 26

*Rozier v. Ford Motor Co.,*
  573 F.2d 1332 (5th Cir. 1978) ..........................................................17

*Tappen v. Ager,*
  599 F.2d 376 (10th Cir. 1979) ..........................................................18

*Thompson v. Kellogg Brown & Root (KBR)/Halliburton,*
  No. 3:07-cv-793, 2008 WL 2019570 (E.D. Va. May 9, 2008) ...........................28

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

**Statutes**

11 C. Wright & A. Miller,
Federal Practice and Procedure § 2864 (1973) ....................................................27

28 U.S.C. § 455 ............................................................................................. 29, 30

28 U.S.C. § 655 ....................................................................................................28

**Other Authorities**

RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS
§ 51 cmt. c (2000) ..............................................................................................18

**Rules**

Fed. R. Civ. P. 60 ............................................................................................ passim

## STATEMENT OF RELATED CASES

CEATS appealed the underlying judgment to this Court on August 13, 2012. The appeal was assigned Case No. 2012-1614 and captioned *Ceats, Inc. v. Continental Airlines, Inc.* This Court affirmed the underlying judgment on April 26, 2013, by an opinion that was not selected for publication in the Federal Reporter. Chief Judge Rader and Judges Prost and Schall served on the panel.

## STATEMENT OF ISSUES

1.      Did the district court abuse its discretion in concluding that CEATS did not show clear and convincing evidence of "extraordinary circumstances" justifying relief from a judgment entered only six days previously?

2.      Is CEATS's appeal moot because the patent claims at issue have finally been held invalid in a judgment of this Court from which CEATS chose not to seek relief?

## INTRODUCTION

CEATS seeks to revive four patent claims that have been adjudged invalid by a final and non-appealable order of this Court. The only grounds advanced for reopening the judgment are (1) that the court-appointed mediator during a pre-trial settlement discussion failed to disclose a personal and professional friendship with a member of the defendants' law firm who did not appear in this case, and (2) the fact that the lawyer who would later become trial counsel for some of the defendants had represented his client in defending an arbitration award in an unrelated case that was challenged on the basis of that friendship.

## STATEMENT OF THE CASE

In April 2010, Plaintiff-Appellant CEATS, Inc. filed the underlying action for infringement of seven patents against each of the Defendants-Appellees. Following a seven-day trial in March 2012, a jury found the four remaining asserted patent claims infringed but invalid, and the district court entered judgment for the Defendants in accordance with the verdict. CEATS moved for judgment as a matter of law that the patents were not invalid, and in the alternative for a new trial. The district court denied those motions on August 10, 2012, and CEATS appealed on August 13, 2012. Immediately after filing the notice of appeal, on August 16, 2012, CEATS filed a motion for relief from the judgment, the district court's denial of which is the subject of the instant appeal. CEATS did not seek reconsideration of the district court's invalidity decision, a stay of the appeal or a remand to the district court.

In the appeal on the merits, case no. 2012-1614, this Court affirmed the district court's denial of CEATS's motions for JMOL and a new trial, holding all asserted claims of the CEATS patents invalid in an opinion dated April 26, 2013. CEATS did not petition for rehearing or for certiorari. Upon regaining full jurisdiction over the case following the issuance of the mandate from this Court in the merits appeal, the district court denied CEATS's FRCP 60 motion on June 28, 2013. This appeal followed.

## STATEMENT OF THE FACTS

Because CEATS's brief contains a number of factual errors regarding dates, we describe the order of events in this case in some detail.

### A.    Mediation

In April 2010, CEATS, Inc. sued 37 companies—airlines, ticket brokers, and an historic theater—for infringement of seven patents relating to seat selection in e-commerce applications.  A1121–42.  In the Docket Control Order for the case, dated September 28, 2010, and upon agreement of the parties, the Court appointed as a mediator the Honorable Robert Faulkner, a retired federal magistrate judge of the Eastern District of Texas, and set a deadline of June 30, 2011 for the parties to complete the mediation.  A1151.

Over three days in June 2011, the parties participated in mediation sessions with Judge Faulkner.  A956 ¶ 4; A1095 ¶ 8.  CEATS says that it confidentially presented Judge Faulkner with what it believed to be a strong position: that the Defendants did not yet have sufficient evidence to effectively demonstrate that the Microsoft Expedia 2.0 prior art reference anticipated all of CEATS's asserted claims.  Opening Br. 9.  The case did not settle, and the parties proceeded toward trial.  In preparing to present their case at trial, the Defendants developed and submitted evidence that demonstrated anticipation.  Although CEATS structures its arguments to suggest that Judge Faulkner shared its confidential mediation

positions with the Defendants, it ultimately admits—as it must—that it has no basis to accuse Judge Faulkner of any such thing. A1107. Defendants have submitted evidence confirming that they received no information from Judge Faulkner regarding deficiencies with their prior art references. A987–89, 1000, 1096. Judge Schneider described CEATS's suggestion that Judge Faulkner might have shared confidential information with Defendants as "an egregious allegation that is completely unsupported by any facts before the Court." A37 n.4.

## B.   Trial

By the time the case went to trial in March 2012, twelve separate defendants and four patent claims remained.[1] The law firm of Fish & Richardson represented some of the defendants, but not all. AirTran Airways retained separate counsel throughout the litigation. A1143–45, A1160–61 (appearances of separate counsel for AirTran Airways); A1153–55, A1164–66 (appearances of lead Fish & Richardson counsel *not* appearing for AirTran Airways). And Alaska Airlines, Horizon Air, and JetBlue dismissed Fish & Richardson in the fall of 2011, hiring other counsel who represented them through trial. A1156–57, A1158–59, A1162–63. During trial, the district court ordered the parties to conduct further mediation

---

[1] The claims in suit were Claim 1 of U.S. Patent No. 7,454,361; Claim 8 of U.S. Patent No. 7,548,866; Claim 5 of U.S. Patent No. 7,660,728; and Claim 5 of U.S. Patent No. 7,548,869.

with Judge Faulkner, but the case again did not settle. A958 ¶¶ 11–12; A1096
¶ 11; A1102 ¶¶ 24–25.

Defendants presented to the jury a compelling invalidity case based on the
Microsoft Expedia 2.0 reference. Defendants' case featured video from 1997
usability studies showing that Expedia had publicly used the patented invention
before CEATS's claimed priority date, numerous documents referring to the
development of the relevant feature in Expedia, and the testimony of multiple
witnesses. A1570. On March 21, 2012, the jury found all asserted claims invalid
as anticipated by and obvious over the Expedia 2.0 reference. A1431. The Court
entered what it called "final judgment" on the jury verdict on March 27, 2012, but
in fact the judgment was not final and appealable until Judge Davis denied
CEATS's motion for judgment as a matter of law on August 10, 2012. A1119–20;
A1554–55. So CEATS's claim that it "only learned of the *Karlseng* case and
[Judge] Faulkner's relationship with Fish after the Court entered final judgment in
the underlying case," Opening Br. 5, is literally true but highly misleading. At the
very latest, CEATS learned of the facts detailed below after the jury verdict was
entered but well before the actual final judgment in the district court.

### C.    The *Karlseng–Cooke* Case

Three years before CEATS filed this case, Judge Faulkner was appointed
through JAMS to arbitrate a partnership dispute in which one of the parties was

represented by Fish & Richardson attorney Brett Johnson. *Karlseng v. Cooke* (*Karlseng II*), 346 S.W.3d 85, 91 (Tex. App. 2011). In the 2008 arbitration, Judge Faulkner awarded $22 million to H. Jonathan Cooke, Johnson's client. *Id.* at 87. The losing party moved to vacate the award on the basis of an undisclosed, close personal and professional relationship between Johnson and Judge Faulkner. *Id.* The state trial court denied that motion, but the Texas Court of Appeals reversed and vacated the award because of the failure to disclose the relationship.[2] The dispute was widely reported in the Texas legal press. A1006–12; A1100 ¶ 9.

*Karlseng* only addressed the relationship between two individuals, Johnson and Judge Faulkner; the question whether Judge Faulkner had any relationship with the Fish & Richardson firm as a whole was not discussed or at issue.

Brett Johnson has never had any association with this case.

### D.    Thomas Melsheimer

The only link between *Karlseng* and this case is Thomas Melsheimer, the managing principal of Fish & Richardson's Dallas office. In November 2010, Melsheimer argued on behalf of Cooke in *Karlseng II* in the Texas Court of

---

[2] This process happened over the course of two appeals. The first appeal remanded the case for the purpose of allowing further discovery on facts to support the motion to vacate the arbitration award. *Karlseng v. Cooke* (*Karlseng I*), 286 S.W.3d 51, 58 (Tex. App. 2009). The second appeal reversed the trial court's subsequent denial of the renewed motion to vacate the award following the discovery. *Karlseng II*, 346 S.W.3d 85, 100.

Appeals to affirm the state trial court's decision to uphold the arbitration award. A1099–1100 ¶ 8. Melsheimer did not represent Judge Faulkner in the *Karlseng* appeal; Judge Faulkner was not a party in that case. A1100–01 ¶¶ 11–16. Melsheimer has no personal relationship with Judge Faulkner; his professional relationship is limited to appearing before the Judge in mediations. A1099 ¶ 6.

Nor did Melsheimer have any relationship to this case at the time of the events in question. It was not until more than a year later—well after the June 2011 mediation sessions with Judge Faulkner, and just a few months before trial— that Melsheimer filed an appearance in this case to serve as lead trial attorney for eight of the remaining twelve Defendants. A1164–66; A1101 ¶¶ 18–19. Melsheimer was not even counsel for Defendants in this case at the time of the first mediation – the one CEATS complains of. Nor did he participate in any of the later mediation sessions that took place before or during trial. A1096 ¶ 12; A1102 ¶ 22. And he was never counsel for AirTran Airways, Alaska Airlines, Horizon Air, or JetBlue.

### E. Post-trial and Appeal

Four weeks after the verdict, on April 18, 2012, CEATS filed motions for judgment as a matter of law and for a new trial. A296. On May 24, 2012, while briefing on the post-trial motions was under way, CEATS obtained a copy of the

*Karlseng v. Cooke* opinion.[3]   Opening Br. 13.   CEATS first raised the issue with the Defendants by way of a request for consent to a motion to amend the Docket Control Order—after trial—to remove Judge Faulkner as the court-appointed mediator.   That happened on June 2, 2012.[4]   A958 ¶ 14; A963–65.   Defendants declined to consent.   *Id.*   The district court held a hearing on the post-trial motions on June 14, 2012, but CEATS did not express concern about Judge Faulkner's participation in any filings nor at the hearing.[5]   A1433–36.   Nor did it do so in any of the four supplemental briefs it filed during that time.   *See* A306.

The district court denied CEATS's Rule 50 and Rule 59 motions on August 10, 2012, and CEATS filed a notice of appeal three days later.   A307–08.   On

---

[3]   CEATS gets this important fact dead wrong in its opening brief — in Defendants' favor.   The opening brief represents that "***Three days after the jury verdict***, on ***March*** 24, 2012, CEATS officers were forwarded news reports regarding tort claims that were brought against Fish, Faulkner, and JAMS arising from the *Karlseng v. Cooke* dispute."   But those claims weren't filed until ***May*** 23, and CEATS apparently did not learn about the *Karlseng* opinion until ***May*** 24.   A958 ¶ 13.

[4]   At one point CEATS misreports this date as June 2, ***2013***, Opening Br. 6, but that is incorrect.   As CEATS itself notes and the underlying declaration makes clear, that request was made while the JMOL motions were still pending, and those motions were denied on August 10, 2012.   A958 ¶ 14.

[5]   CEATS says that "[a]fter Defendants refused to consent, CEATS filed a post-trial motion which was denied on August 10, 2012."   Opening Br. 6–7.   Once again CEATS has its timeline wrong.   CEATS filed its motion for judgment as a matter of law on April 18, 2012, before it claims it became aware of the *Karlseng* case.   A296.   It filed briefs in the district court after that time, but did not file a post-trial motion between June and August, 2012.   A305–08.

August 16, 2012, only six days after the district court's opinion, only three days after CEATS noticed its appeal, and nearly three months after it learned the *Karlseng* facts on which it entirely relies, CEATS filed a Rule 60 motion at the district court for relief from the judgment.[6]   This motion was CEATS's first mention to the court of its contention that Judge Faulkner's participation as a mediator in the case was unfair.  The parties briefed the Rule 60 motion in August and September, and briefed the appeal between October and December.  A308–10; A1593–94.  This Court heard oral argument on March 5, 2013.  A1595.

On April 26, 2013, this Court issued a non-precedential opinion affirming in all respects the district court's denial of the JMOL and new trial motions.  A1581. CEATS did not petition for panel rehearing, rehearing en banc, or certiorari to the Supreme Court.  This Court's judgment—issued April 26, 2013, and entered on the district court's docket on June 3, 2013—was therefore a final, non-appealable judgment of invalidity of the four asserted patent claims.  A313.  The prevailing parties in that appeal included not only the Defendants here, but also AirTran Airways, which was represented by separate counsel throughout the litigation, including on appeal.  A1567–68.

---

[6]  CEATS says that it filed its Rule 60(b) motion on March 19, 2013.  Opening Br. 6.  But that is at best highly misleading.  It filed the original 60(b) motion on August 16, 2012, under seal.  A308.  Following court orders regarding redaction, A1559–64 & A1565–66, CEATS then *refiled* the same motion on March 19, 2013. A848.

Following issuance of the mandate, the district court denied the Rule 60 motion for relief from the judgment on June 28, 2013. A45. In its order, the district court made a number of findings. Importantly, the district court found that Melsheimer did not have *any* disclosure obligation, that Judge Faulkner did not violate any disclosure obligation, and that the Johnson–Faulkner relationship was not imputed to the entire Fish & Richardson firm. A31–35. It further found that even if there had been a failure of disclosure, CEATS had not been deprived of a full and fair opportunity to present its case, but instead had the fullest such opportunity provided at law: a trial by jury. A35–38. The district court expressly considered and rejected certain opinions of Plaintiff's ethics expert, David Hricik, about questions of law. A34 n.3.

A timeline of the significant events in the case follows.

| Date | Event | Support |
|---|---|---|
| 2007 – 2008 | Judge Faulkner arbitrates Karlseng–Cooke dispute | A1006–12 |
| April 21, 2009 | Texas Court of Appeals remands for further discovery | A852 |
| second half of 2009 | State trial court upholds Judge Faulkner's arbitration award | A852 |
| April 5, 2010 | CEATS files initial complaint in this case | A172 |
| September 28, 2010 | District court appoints Judge Faulkner as mediator | A1151 |
| November 30, 2010 | Thomas Melsheimer presents oral argument before Texas Court of Appeals in *Karlseng II* | A1099–1100 ¶ 8 |

| Date | Event | Support |
|---|---|---|
| June 21, 2011 | First mediation session before Judge Faulkner | A1095 ¶ 8 |
| June 28, 2011 | Texas Court of Appeals issues *Karlseng II* | A850 |
| June 30, 2011 | Further mediation before Judge Faulkner | A1095 ¶ 8 |
| August 24, 2011 | Klemchuk Kubasta LLP files appearance on behalf of JetBlue, Alaska, and Horizon | A1156–57; A1158–59 |
| December 16, 2011 | Thomas Melsheimer first appears on behalf of certain defendants (but not JetBlue, Alaska, Horizon, or AirTran) | A1164–66 |
| March 13, 2012 | Further mediation before Judge Faulkner | A1096 ¶ 11 |
| March 21, 2012 | Jury returns verdict finding CEATS's patent claims infringed but invalid | A1426–32 |
| March 27, 2012 | District court enters "Final Judgment" in accordance with verdict | A1119–20 |
| April 18, 2012 | CEATS files JMOL & new trial motions | A296 |
| May 24, 2012 | CEATS claims to have first seen *Karlseng* opinion | A951–52 ¶ 7 |
| June 2, 2012 | CEATS asks defendants to consent to motion to remove Judge Faulkner as mediator | A958 ¶ 14; A963–65 |
| June 14, 2012 | Hearing on post-trial motions | A307 |
| August 10, 2012 | District court denies CEATS's post-trial motions | A1529 |
| August 13, 2012 | CEATS files Notice of Appeal on merits issues | A308; A1556–58 |
| August 16, 2012 | CEATS files Rule 60 motion | A308 |
| October 4, 2012 | Parties complete Rule 60 briefing | A311 |
| March 19, 2013 | District court orders parties to re-file Rule 60 briefing | A1565–66 |
| April 26, 2013 | Federal Circuit affirms denial of CEATS's JMOL motions | A1581 |
| June 28, 2013 | District court denies CEATS's Rule 60 motion | A26–45 |

## SUMMARY OF THE ARGUMENT

CEATS bases its argument on two conjectures, both wildly implausible. First, it argues that Judge Faulkner and the Fish attorneys violated duties of disclosure and impartiality because they did not disclose that Judge Faulkner and a Fish & Richardson attorney unrelated to this litigation, Brett Johnson, had a relationship. The only connection CEATS can draw between Johnson and this case is that Thomas Melsheimer, lead counsel for some Defendants at trial, had previously represented Johnson's client in defending an award against a challenge based on that relationship. CEATS surmises that that connection might somehow have biased the mediator, but that is impossible: Melsheimer was not even an attorney in this case until six months *after* the mediation CEATS complains of. And even were these facts to create some sort of disclosure obligation, CEATS can show no prejudice to its case, because the failed mediation (one CEATS now says it would not have agreed to conduct) had no effect on the ultimate trial and the jury's finding that the patents were invalid.

The second conjecture is even more implausible, so much so that CEATS will not commit itself even to arguing it. CEATS hints at various points in its brief that because of his supposed bias, Judge Faulkner might have passed confidential CEATS information to other Fish attorneys (though not Melsheimer) during the mediation. But when pressed, CEATS expressly disclaimed making any such

14

argument, and admitted that it had no evidence whatsoever to support that suggestion. The district court rejected that suggestion as "an egregious allegation that is completely unsupported by any facts before the Court." A37 n.4.

CEATS bore an extremely high burden to persuade the district court to vacate the judgment of this Court under Rule 60(b), particularly since it was aware of the facts it now asserts before the district court finally ruled in the underlying proceeding. It bears an even higher burden to persuade this Court that the district court abused its discretion in refusing to do so. CEATS cannot meet that burden.

Even if it could, it would not matter. The patents at issue in this case have been held invalid in a final judgment affirmed by this Court and from which CEATS did not seek relief. And they have been held invalid not just in litigation with Defendants represented by Melsheimer, but also in litigation with AirTran Airways, which is not accused of any wrongdoing, and Alaska, Horizon, and JetBlue, who were never represented by Melsheimer. Those invalid patents cannot be revived, and certainly not on the basis of evidence that was concededly in CEATS's possession while the case was still in the district court. This case is accordingly moot.

# ARGUMENT

## I.   RELIEF FROM THE FINAL JUDGMENT PURSUANT TO RULE 60 IS INAPPROPRIATE

Federal Rule of Civil Procedure 60(b) enumerates six grounds on which a

party may seek relief from a final judgment:

> (1)   mistake, inadvertence, surprise, or excusable neglect;
>
> (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4)   the judgment is void;
>
> (5)   the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b).   CEATS appeals the district court's denial of its motions

under subsections (b)(3) and (b)(6).

### A.   The District Court Properly Rejected CEATS's Rule 60(b)(3) Motion

#### 1.   The District Court Applied the Proper Law

A Rule 60(b)(3) motion "must establish (1) that the adverse party engaged in

fraud or other misconduct, and (2) that this misconduct prevented the moving party

from fully and fairly presenting his case." *Hesling v. CSX Transportation, Inc.*,

396 F.3d 632, 641 (5th Cir. 2005).[7]  The moving party bears the burden of proving the misconduct by clear and convincing evidence.  *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).  A denial of a Rule 60(b) motion is reviewed for abuse of discretion.  *Patterson v. Mobil Oil Corp.*, 355 F.3d 476, 486 (5th Cir. 2003).

The district court denied the Rule 60(b)(3) motion on the grounds that CEATS failed to "show some limitation or misdirection or other result that limited its ability to present its case."  A37.  In this appeal, CEATS characterizes that requirement as a "departure" from the case law.  Opening Br. 27.  To the contrary, it is taken nearly verbatim from language CEATS cites in its brief as the controlling law.  Opening Br. 21–22, *citing Hesling*, 396 F.3d at 641 (movant "must establish . . . that this misconduct prevented the moving party from fully and fairly presenting his case"); *see also Rozier*, 573 F.2d at 1339 (noting that Rule 60(b)(3) requires that "[t]he conduct complained of must be such as prevented the losing party from fully and fairly presenting his case or defense").  These cases dispose of CEATS's inexplicable argument that the district court invented the requirement.

---

[7] The parties agree that Fifth Circuit law applies to the Rule 60 issues.

### 2. No Defendant nor Any Fish Attorney Engaged in Any Misconduct

CEATS maintains that the judgment should be set aside under Rule 60(b)(3) on the basis of purported breaches by Thomas Melsheimer and "Other [unspecified] Fish Attorneys," Opening Br. 24, of their duty to disclose "their relationship" with Judge Faulkner and "the facts underlying the *Karlseng* case." Opening Br. 22.

As an initial matter, the attorneys at Fish did not owe any duty to CEATS, a party opposing them in litigation. Duties at law are reserved for parties in a relationship of trust, and the relationship between adverse parties in litigation is structurally antithetical to the sort of duty that can give rise to fraud. RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 51 cmt. c (2000) ("A lawyer representing a party in litigation has no duty of care to the opposing party" "except in unusual situations" not applicable here); *see also Friedman v. Dozorc*, 412 Mich. 1, 25 (1981) (public policy precludes finding attorney has duty of care to opponent in litigation). Thus the only relevant "duty" must be counsel's professional duty of candor to the courts. *Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir. 1979) ("The lawyer's duty of care is to his client and to the court.").

Moreover, Melsheimer had no relationship with Judge Faulkner that required disclosure. They had no social dealings, and their professional contacts were limited to participation in mediations in other cases than this one. A1099 ¶ 5.

The "relationship" advanced by CEATS is that Melsheimer "defended" Judge Faulkner's arbitration award in the *Karlseng* appeal. Opening Br. 10, 24. In that appeal, Melsheimer argued for the upholding of the award issued by Judge Faulkner, but did not "defend" Judge Faulkner in any sense. Although facts about Judge Faulkner formed the basis of the *Karlseng* appeal, Faulkner was not a party to the case, and Melsheimer certainly did not represent him. A1100–01 ¶¶ 11–16.

The district court specifically found there to be no relationship that required disclosure. A33–34 ("the Fish & Richardson attorneys involved in *Karlseng* were defending an award in favor of their client, not in favor of Judge Faulkner. They did not represent Judge Faulkner. They did not represent someone aligned with Judge Faulkner. They did not 'virtually represent' Judge Faulkner."). The court went on to find that "Mr. Melsheimer—like the other Fish & Richardson attorneys—did not violate any of the ethical obligations listed above or the more general duty to act with professional integrity." A34. Those findings are reviewed for abuse of discretion under the clear and convincing evidence standard. CEATS offers no reason to think they are clearly erroneous.

The district court considered that Judge Faulkner might have "hoped" that the *Karlseng* award would be upheld, but determined that no "relationship" is created by that hope. A34. A judge of this Court might similarly wish success upon an advocate arguing for affirmance of her opinion at the Supreme Court, but

that connection would not have to be disclosed if the attorney later argued an appeal before the Federal Circuit. Nor does undersigned counsel have to disclose, the next time we have a case assigned to Judge Schneider, that we have a "prior relationship" with him by virtue of having argued in this appeal for affirmance of his order below.

In any event, Melsheimer's alleged relationship with Judge Faulkner could not possibly have influenced the course of the mediation in this case, for the simple reason that Melsheimer was not counsel for Defendants at the time of the mediation. The mediation at issue occurred in June 2011. A1095 ¶¶ 7–8. Melsheimer was not brought in as trial counsel for defendants until December 2011, six months later and after the *Karlseng* case had finally ended. A1164–66; A1101 ¶¶ 18–19. Thus, he was not even counsel for Defendants at the time of the first mediation – the one CEATS complains of. Nor was he ever counsel in *Karlseng* and this case at the same time. And he did not attend the second mediation that occurred during trial. A1102 ¶ 22.

Alternatively, CEATS argues that Melsheimer and "Other Fish Attorneys" should have disclosed the personal relationship between Judge Faulkner and Brett Johnson. Opening Br. 24–25. Johnson had nothing to do with this case, and CEATS disavowed this argument at the district court. A32; A1106 (representing that CEATS "never argued that relief from judgment is required simply because

there was an undisclosed personal relationship between Judge Faulkner and Brett Johnson"). No rule of ethics or law limits relationships between judges and lawyers who are not involved in the case, and CEATS has pointed to no cases creating any such relationship. Indeed, CEATS disavowed the argument itself in the district court. It would be disastrous policy to overturn final judgments whenever the losing party can show that any attorney of the winning firm was friends with a judge, arbitrator, or mediator. And even were Johnson to have such a duty, the district court specifically found "no authority to impute the relationship between Judge Faulkner and Mr. Johnson to the entire Fish & Richardson firm," A32, a finding CEATS does not challenge on appeal.

### 3. CEATS Was Not in Any Way Limited From Fully and Fairly Presenting Its Case

Even had there been a failure to disclose some improper relationship, there is no evidence that CEATS was in any way limited from fully and fairly presenting its case. The district court correctly determined that CEATS made no showing of this second, independent requirement for relief pursuant to Rule 60(b)(3). A35–38.

The mediation did not determine any substantive issues in the case, and Judge Faulkner wielded no power over the parties. In briefing on the Rule 60(b) motion at the district court, CEATS speculated that if the parties had used another mediator, the case might have settled. A815. Essentially, CEATS complained to the district court not that it was *prevented* from fully and fairly presenting its case,

21

but that it was *forced* to fully and fairly present its case rather than being paid to drop a suit over invalid patents. Where the alleged misconduct could not have affected the outcome of the case, the Fifth Circuit has held that a plaintiff cannot demonstrate that it was deprived of the opportunity to fully and fairly litigate the case. *Hesling*, 396 F.3d at 642. The district court found as a matter of fact that CEATS could not make such a showing. A38. That finding was not an abuse of discretion.

At several places in its brief, CEATS notes that it confidentially identified a weakness in Defendants' invalidity case to Judge Faulkner, asking him to keep that information confidential, and thereafter Defendants addressed the failure of proof. Opening Br. 5–6, 11–12, 26–27. CEATS is never willing to explicitly make the accusation, *see* A1107, but the unmistakable insinuation is that Judge Faulkner did not keep their information confidential. But because CEATS expressly disavowed that theory at the district court, instead explicitly representing that it "did not make that allegation," *id.*, it should not be permitted to raise it on appeal.

In any event, this theory of harm is frivolous. The district court made a particularly clear finding:

> The Court notes that nothing in the record suggests that Faulkner shared Plaintiff's confidential information with Defendants. Even Plaintiff will not commit itself to such an allegation. But Plaintiff clearly intended to suggest such a possibility. The Court notes that this is an

> egregious allegation that is completely unsupported by
> any facts before the Court.

A37 n.4.   In other words, the district court found that there were *no* facts

supporting the notion that CEATS's presentation of its case was affected by the

mediation – much less the required clear and convincing evidence.  And indeed on

appeal CEATS offers not a single piece of evidence to support this rather serious

allegation.  To the contrary, CEATS below said that it "has no means of knowing"

whether Judge Faulkner engaged in misconduct.  A1107.  Defendants made very

clear that no such misconduct occurred.  A987–89, 1000, 1096 ¶ 10.  The district

court certainly did not abuse its discretion in concluding that CEATS, which failed

to present any evidence to support this theory, admitted it had no such evidence,

and was unwilling even to say that it believed its own theory, had not presented

clear and convincing evidence of fraud by Judge Faulkner.

### 4.   Judge Faulkner Owed No Duty Under Rule 60(b)(3) Because He Was Not a Party to This Case

CEATS argues at length that Judge Faulkner "breached the duty to disclose"

his relationship to someone at Fish & Richardson (CEATS is purposefully vague

about whom the relationship was with).  Opening Br. 22–24.  And its on-again,

off-again theory that Judge Faulkner disclosed confidential information to Fish

lawyers is also directed at Judge Faulkner.  For all the reasons discussed in the

previous section, Judge Faulkner had no duty to disclose a relationship with

Johnson (who had nothing to do with this case) or with Melsheimer (because there was no relationship to disclose, and because Melsheimer was not involved in the case at the time of mediation).

But it would not matter even if Judge Faulkner did have such a duty. Relief pursuant to Rule 60(b)(3) in connection with Judge Faulkner's supposed breach is foreclosed by the plain language of the rule, which requires misconduct "by an opposing party." Judge Faulkner was not a party to this case.

### 5. The District Court Properly Considered and Disregarded the Legal Testimony of CEATS's Expert

The district court's decision not to rely on the opinions of law professor David Hricik, CEATS's ethics expert, was justifiable. The court would have been well within its right to decline to consider the expert opinions submitted by both parties as to the legal standard applicable to mediators, as pure questions of law require no expert opinion. *See Askanase v. Fatjo*, 130 F.3d 657, 672–73 (5th Cir. 1997); *see also In re Solerwitz*, 848 F.2d 1573, 1578 (Fed. Cir. 1988). But in fact, contrary to CEATS's claim, the district court did not "fail[] to consider or reference" the Hricik report. Opening Br. 35. It both considered and discussed the report. A34 n.3.[8] It is simply false to suggest that the district court excluded Hricik's testimony.

---

8 CEATS's argument that the district court excluded Hricik's testimony under *Daubert*, Opening Br. 35–38, is misplaced, even perplexing. *Daubert* sets forth the

Second, the report was not "unrebutted" — Defendants submitted a report from their own expert, James M. McCormack (former General Counsel and Chief Disciplinary Counsel for the State Bar of Texas and Chairman of the Texas Center for Legal Ethics and Professionalism), who came to conclusions opposite those of Mr. Hricik. A1078–86. He presented evidence that neither Melsheimer nor the Fish firm had any relationship with Judge Faulkner requiring disclosure, and that Melsheimer did not violate any professional standard by not making an affirmative disclosure. A1078–84.

Finally, the district court was justified in refusing to rely on Hricik's testimony because that testimony was based on a misunderstanding of the facts of the case. Hricik's report indicated that Melsheimer was involved in the June 2011 mediation in front of Judge Faulkner, when in fact Melsheimer did not become involved in the case until six months later. A1164–66; A1101 ¶¶ 18–19. The district court specifically rejected the factual predicate for Hricik's report – that Melsheimer's relationship with Judge Faulkner was on a par with Johnson's relationship. A34 n.3. CEATS does not challenge that factual finding on appeal.

---

standard for allowing expert testimony to be heard by a jury, while the expert reports at issue here were submitted as exhibits to a motion for the court. The district court did nothing to suggest that it was excluding Hricik's testimony as evidence, and certainly did not hold a *Daubert* hearing.

### B. The District Court Properly Rejected CEATS's Rule 60(b)(6) Motion

Subsection (b)(6) is the catch-all provision of Rule 60, allowing for relief from judgment for any reason not enumerated in clauses (1) through (5). The catch-all provision is reserved for cases presenting "extraordinary circumstances," *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 749 (5th Cir. 1995), requiring the movant to "show the initial judgment to have been manifestly unjust." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993) (citation omitted). Importantly, clause (6) is mutually exclusive from clauses (1) through (5). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988).

By using the nonspecific language "any other reason that justifies relief," clause (6) provides district courts with broad discretion to assess whether relief from a judgment is in the interest of justice. The rule's wide berth respects a district judge's up-close view of the equities of a given case. Accordingly, a denial of relief is reviewed only for an abuse of discretion. *Patterson*, 355 F.3d at 486.

### 1. CEATS Attempts to Salvage with Rule 60(b)(6) the Same Theory That Fails Under Rule 60(b)(3)

CEATS does not advance a different set of facts to support its Rule 60(b)(6) motion. Rather, it argues that the very same facts it (unsuccessfully) alleged to constitute fraud under Rule 60(b)(3) also constitute "other circumstances" under Rule 60(b)(6).

The Supreme Court has held that the already-high standard for relief under Rule 60(b)(6) is even higher when a party attempts to use Rule 60(b)(6) to obtain relief it failed to obtain under one of subsections (1)–(5):

> In *Klapprott v. United States,* 335 U.S. 601, 613 (1949), we held that a party may "not avail himself of the broad 'any other reason' clause of 60(b)" if his motion is based on grounds specified in clause (1)—"mistake, inadvertence, surprise or excusable neglect." Rather, "extraordinary circumstances" are required to bring the motion within the "other reason" language and to prevent clause (6) from being used to circumvent the 1–year limitations period that applies to clause (1). This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive. See 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864 (1973).

*Liljeberg*, 486 U.S. at 863 n.11.  It would make little sense to allow parties to avoid the requirements of subsection (3) and still seek relief under subsection (6).  But that is precisely what CEATS does here in arguing that Judge Faulkner's putative duty to disclose his relationship with Johnson violated both sections.[9]

---

[9]   While the district court concluded that CEATS's subsection (b)(3) claim was directed only at the attorneys' supposed duty of disclosure and the (b)(6) claim at Judge Faulkner's, A39, in fact CEATS draws no such distinction on appeal, accusing Judge Faulkner as well as the Fish attorneys under subsection (b)(3). Opening Br. 22–24.

### 2. The District Court Gave CEATS the Benefit of the Doubt in Applying a Higher Standard of Conduct Than the Law Warrants

Section 455 articulates neutrality requirements for federal judges.[10] Congress extended those provisions to arbitrators, 28 U.S.C. § 655(b)(2), but *not* to mediators, suggesting that Congress did not intend the same rules to apply to mediators. *See Dean v. United States*, 556 U.S. 568, 573 (2009) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'"); *see also Gonzalez v. Dep't of Transp.*, 551 F.3d 1372, 1376–77 (Fed. Cir. 2009) ("This court must honor . . . the principle of *expressio unius est exclusio alterius*"). CEATS argued to the district court that the neutrality requirements for mediators are the same as for judges, while Defendants argued (and the district court agreed) that the differences between mediation and binding dispute resolution procedures counsel in favor of applying the neutrality requirements differently. A41–42; *see also Thompson v. Kellogg Brown & Root (KBR)/Halliburton*, No. 3:07-cv-793, 2008 WL 2019570, at *4 (E.D. Va. May 9, 2008) (explaining how mediation "is separate and wholly distinct" from arbitration).

---

[10] Section 455(a) provides, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

Nonetheless, because the closest case on point, *Liljeberg*, dealt with judicial recusal based on conflicts of interest, the district court walked through the considerations that the Supreme Court identified as important in the context of a Rule 60(b)(6) motion brought on the grounds of a judge's failure to recuse in accordance with 28 U.S.C. § 455(a). In doing so, the district court bent over backwards to help CEATS, applying a legal standard more favorable to it than the law in fact requires. The court nonetheless found that CEATS could not satisfy even that more favorable standard.

Curiously, on appeal CEATS complains that the district court chose to be too lenient on it. CEATS's argument on appeal is that the district court, having determined earlier in its order that mediators are not subject to neutrality requirements as strict as those applicable to arbitrators or judges, was inconsistent and committed reversible error by nevertheless applying the *Liljeberg* standard for Rule 60(b)(6) motions based on violations of 28 U.S.C. § 455(a).

All parties plainly agree that the neutrality requirement for judges is *at least as strict* as the one for mediators. Therefore, if the district court found that no relief from judgment was warranted after "incorrectly" analyzing the facts pursuant to the stricter Section 455(a) standard, then relief is even more certainly inappropriate here. And, as we show in the next section, the district court did not

abuse its discretion in concluding that CEATS failed to provide clear and convincing evidence even under that more lenient standard.

### 3. The Three *Liljeberg* Factors All Favor Allowing the Final Judgment to Stand

In *Liljeberg*, the Supreme Court identified three general considerations to be applied in the context of a Rule 60(b)(6) motion based on a district judge's failure to recuse pursuant to 28 U.S.C. § 455(a): *first*, the risk of injustice in this particular case; *second*, the risk that the denial of relief will produce injustice in other cases; and *third*, the risk of undermining the public's confidence in the judicial process. 486 U.S. at 863–64. CEATS cannot meet any of these factors. As the district court noted, the facts of this case are "drastically different" than *Liljeberg*. A40.

#### a. CEATS Can Show No Injustice in This Case.

First, there is no risk of injustice in the present case. Lest there be any concern about Judge Faulkner's role in the mediation having affected the outcome of the case, the district court made the following detailed factual findings:

> Judge Faulkner did not have a personal or fiduciary interest in *Karlseng*. There is no evidence that Judge Faulkner participated in meetings directing the litigation in *Karlseng*. He had no authority to make or influence legal or factual rulings in this case. Finally, Judge Faulkner was not compelled by statute to disqualify himself from this case.
> . . . .
> Judge Faulkner did not exercise control over the presentation of the case. He did not make evidentiary rulings. He did not compose or influence the jury

> instructions. He did not direct attorneys on time or form or any other matters pertaining to the trial. Judge Faulkner's only impact on the trial was that it happened at all (since the case did not settle).

A41–42.

The result of the litigation was a complete trial on the merits at which all available evidence was presented in support of the parties' claims and defenses. Read most charitably to CEATS, the "risk of injustice" CEATS points to is that it was deprived of the opportunity to sneak invalid patents through the district court by capitalizing on a failure of proof.

As noted above, CEATS itself admitted there was no evidence at all that the mediator had anything to do with Defendants' discovery of the supposed failure of proof, and substantial evidence that the mediator had nothing to do with that discovery. But even if it had, justice was served in this case when the evidence was presented to the jury, then to the district court, then to the Federal Circuit, all of whom found clear and convincing evidence that CEATS's patents were invalid. At bottom, CEATS complains that it was prejudiced, not by a "manifest[]" injustice, *Edward H. Bohlin Co.*, 6 F.3d at 357, but by the very fact that the evidence was heard and the jury and judges reached the conclusion that the patents were invalid. That is justice, not injustice.

### b. This Decision Poses No Risk in Other Cases.

Affirmance of the district court's denial of relief from the judgment will not "eviscerat[e] every statute and rule that requires the neutrality of court-ordered mediators." Opening Br. 32. CEATS suggests that if disclosure was not appropriate here, it would never be appropriate. *Id.* 33. But the facts of this case present a uniquely weak argument for disclosure, since they involve (1) a mediator rather than a judge, (2) who had no relationship with the attorneys in the case, and (3) in which the circumstances now alleged to give rise to a duty of disclosure did not even exist at the time Judge Faulkner was supposed to have a disclosure obligation. The "risk" that courts will not require disclosure in other, similarly weak cases is no risk at all. Rather, affirmance will confirm the existing practical, workable standard by which mediators who are not actually biased cannot be used as the basis to overturn judgments three years after the fact. Far more injustice and disruption would come from allowing losing parties to throw out unfavorable judgments by challenging mediators who have no relationship with the individuals who appear before them.

### c. Nothing About Judge Faulkner's Conduct in This Case Undermines Public Confidence.

CEATS worries about the erosion of public confidence in the judicial process based on Judge Faulkner's friendship with Brett Johnson. But elsewhere, CEATS represented that it has "never argued that relief from judgment is required

simply because there was an undisclosed personal relationship" between the two. A1106. When the parties held their first mediation before Judge Faulkner, Melsheimer, the only lawyer CEATS has argued has even a tangential relationship to *Karlseng*, was not even involved in this case. Nor did Melsheimer participate in the second mediation. And Johnson was never involved in this case at all. Stripped to its essence, CEATS's theory is that the public will lack confidence in the impartiality of mediators because Judge Faulkner should have known in 2010 that a lawyer (Melsheimer) who represented the client of a different lawyer (Johnson) with whom Judge Faulkner had a relationship would join this case two years later. The Supreme Court aptly dismissed this prescience theory in *Liljeberg*, noting that the law "does not call upon judges to perform the impossible—to disqualify themselves based on facts they do not know." 486 U.S. at 861.

It would, perhaps, undermine public confidence if mediators were known to disclose confidential information after promising not to. But CEATS itself is not even willing to publicly express a belief that Judge Faulkner did any such thing in connection with the mediation. A1107. It admits it has no evidence whatsoever to support such an allegation. *Id.* And the district court categorically rejected it. A37 n.4. If CEATS—the supposedly aggrieved party—does not even stand behind that allegation, there is no risk that the public will be shaken by it either.

## II. THIS CASE IS MOOT BECAUSE THE PATENT CLAIMS IN SUIT HAVE BEEN FINALLY ADJUDGED INVALID

CEATS knew everything underlying its complaints about Judge Faulkner before the district court ever heard, much less decided, its challenge to the jury's invalidity verdict. CEATS made the evidently tactical decision to split its challenges in two, and allow the district court to rule on its motion challenging the invalidity verdict before ever raising its complaints about the mediator. It then doubled down on its double-dipping and asked this Court resolve its invalidity arguments before ever presenting the district court with its complaints about the mediator. As a result of CEATS's tactical maneuvering, however, this appeal is now moot: this Court has finally adjudged its patent claims invalid, and the time for further review has run.

### A. CEATS Knew All the Facts Relevant to This Appeal by June 4, 2012

The *Karlseng* case—the facts of which form the only basis for CEATS's argument that the judgment should be set aside—was decided and published on June 28, 2011. 346 S.W.3d 85. The decision was covered by Texas and national legal media. A1006–12; A1100 ¶ 9. CEATS or its lawyers could accordingly have been aware of the facts of that case nearly a year before trial.

On May 24, 2012, the *Karlseng* dispute made the news again when Judge Faulkner was named as a defendant in a civil case arising out of issues related to

*Karlseng.*  CEATS's CEO received that news report and sent it to CEATS's counsel.[11]  CEATS's trial counsel declared that May 24, 2012 was when he first learned of "the facts related to *Karlseng.*"  A958 ¶ 13.[12]

On June 2, 2012, CEATS's counsel sent an email to Melsheimer requesting that the Fish defendants consent to a motion to modify the docket control order to remove Judge Faulkner as the court-appointed mediator. A965.  Melsheimer declined.  *Id.*  Not later than June 4, 2012, CEATS's counsel knew that Melsheimer had argued on behalf of Cooke before the Texas Court of Appeals.  A958 ¶ 15.  So by June 4, 2012, CEATS knew all the facts it relies upon in its opening brief.

### B.  CEATS Elected Not to Raise Its Concerns to the District Court Until After Appealing the Case

In its opening brief, CEATS represents that, "[a]fter Defendants refused to consent [to its motion to remove Faulkner], CEATS filed a post-trial motion which

---

[11] CEATS's opening brief reports this date as "three days after the jury verdict" on "***March*** 24, 2012," but the record is clear that CEATS's CEO received the reports on ***May*** 24, 2012.  A958 ¶ 13; A951–52 ¶ 7.

[12] CEATS's opening brief construes the declarations of Milford Skane (CEATS's CEO) and Michael Nadel (its trial counsel) to say that May 24, 2012 was the first that CEATS's attorneys "learned of the Texas Court of Appeals' opinion." Opening Br. 13.  Nadel's declaration does not go that far, but rather says only, "[t]hat was the first time we knew of any of the facts related to *Karlseng v. Cooke.* That same day, we obtained a copy of the Texas Court of Appeals decision in *Karlseng v. Cooke.*"  A958 ¶ 13.  Pointedly, Nadel's declaration never states that CEATS's attorneys did not already know of the *Karlseng* case or had not seen the news related thereto.

was denied on August 10, 2012." Opening Br. 6–7. This statement is inaccurate. CEATS did not file any motion between June 2 and August 10, 2012. A305–08. The appendix pages cited as support for the assertion are to the district court's order denying CEATS's JMOL motion of non-invalidity; that order was issued on August 10, 2012, but the JMOL motions were not filed "[a]fter Defendants refused to consent" and did not anywhere mention CEATS's mediator concerns.

CEATS did, however, forgo several opportunities during that time period to raise the Judge Faulkner issue. On June 5, 2012, it filed an administrative motion. A305. On June 11, 2012, CEATS filed four surreplies on JMOL issues. A306. On June 14, 2012, the parties appeared before the district court to argue the JMOL motions; the transcript of the hearing spans ninety-six pages but CEATS does not voice any concern about Judge Faulkner. A1433, 1528. Then eight weeks passed quietly until the district court entered its order denying CEATS's JMOL motions and upholding the jury's invalidity verdict. A307.

Three days after the district court denied the JMOL motions, CEATS appealed that order on the merits. A1556–58. Only *after* filing the notice of appeal did CEATS first raise its concerns about Judge Faulkner to the district court via its Rule 60 motion, the denial of which is the subject of this second appeal. Notably, it did so only three days after filing its notice of appeal, and only six days after the district court's ruling denying the JMOL motions. A307–08.

CEATS thus had numerous procedural opportunities to timely raise its concerns without resort to Rule 60(b). In addition to the opportunities afforded by the filings and appearances it made at the district court while knowing all the relevant facts, it could have taken a number of other actions to timely raise the issue, including filing a motion for reconsideration under Rule 59, which would have been timely on the date CEATS filed its Rule 60(b) motion instead, or a motion for stay in this Court.

### C. The Claims at Issue Are Irretrievably Invalid, So There Is No Live Patent to Litigate

The jury found all four patent claims in suit invalid on March 21, 2012. A1426–32. On March 27, 2012, the district court entered judgment memorializing the verdict. A1119–20. That judgment became final on August 10, 2012 upon the district court's denial of CEATS's motions for judgment as a matter of law and for a new trial. A307–08. CEATS appealed, and this Court affirmed the judgment of invalidity in all respects on April 26, 2013. CEATS did not petition for panel rehearing or rehearing en banc, and the formal mandate of this Court was filed at the district court on June 3, 2013, following the end of the thirty-day period allowed for such a petition. A313. The ninety-day period to petition for a writ of certiorari to the Supreme Court has also lapsed. CEATS did not request tolling of either period pending resolution of the Rule 60 motion.

### D.    CEATS's Tactical Decision Not to Timely Raise Its Challenge to the Mediator Has Rendered This Case Moot

This Court has recently made clear in *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013), that once a patent is declared invalid, all causes of action based on the patent are extinguished, no matter how far advanced those cases are.  Here, all available relief has been exhausted and the claims-in-suit have been finally declared invalid by this Court.  CEATS has chosen not to seek en banc review of that decision or to petition the Supreme Court for certiorari.

Even if Rule 60 provided a way to resurrect a finally invalid claim, it would do CEATS no good here.  CEATS's theory of relief is entirely based upon nondisclosure about the mediator's relationship with a partner at Fish & Richardson, one who was not involved in this case.  It tries to tie that relationship to lead trial counsel for some of the Defendants, Thomas Melsheimer, even though Melsheimer did not even represent Defendants at the time of the first mediation and did not appear at the second.  But even if there were such a relationship, and even if it were improper, several defendants (AirTran Airways, Alaska Airlines, Horizon Air, and JetBlue) were never represented by Melsheimer at all.  Opening Br. 8–9 n.2; A1156–57, 1158–59, 1162–63; A1254.  AirTran is not a party to this appeal, and CEATS has not alleged that AirTran's lawyers engaged in wrongdoing.  Thus, even if the judgment in favor of the defendants Fish represented were set aside, the judgment of invalidity in favor of AirTran, Alaska,

Horizon, and JetBlue would remain.  Since a finding of a patent claim's invalidity in one case is collateral estoppel in all others, *see Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313 (1971), setting aside the judgment against the Fish defendants would not have any practical effect.  Even were it to prevail in its allegations against Judge Faulkner, CEATS would not be permitted to revive a case asserting patents now known to be invalid.

CEATS acknowledges, as it must, that AirTran has been represented by separate counsel throughout this litigation.  Opening Br. 8–9 n.2.  CEATS's brief makes no argument that attorneys for any of the four non-Fish defendants have violated any duty of disclosure (because of course they had none).  The only connection that CEATS draws between AirTran and Fish & Richardson is that Melsheimer gave opening arguments on behalf of all defendants at trial.  A1332.  The district court explained in its order that this was done "in view of court-imposed time constraints," and did not "place AirTran Airways on the same footing as those Defendants represented by Fish & Richardson."  A43.  Melsheimer did *not* appear on behalf of AirTran, Alaska, Horizon, or JetBlue; each had their own lawyers introduce themselves to the jury.  A1164–66; A1168–69.  The fact that defendants did not do three different opening arguments certainly did not create in AirTran, Alaska, Horizon, or JetBlue some obligation to disclose facts

related to a mediation and a relationship of which CEATS has not even alleged they were aware.

Even if this Court were to set aside the judgment that currently stands in favor of the Defendants that were Fish & Richardson's clients, there would be no basis for modifying the judgment that runs in favor of AirTran, Alaska, Horizon, or JetBlue.

This Court has made it very clear that once a patent is finally held invalid, pending cases involving that patent must be dismissed no matter how far along they are. *Fresenius*, *supra*. It does not matter that previous courts had upheld the same patent, or indeed even that this Court had previously affirmed such a holding that the patent was not invalid. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1364–66 (Fed. Cir. 2012); *In re Swanson*, 540 F.3d 1368, 1378 (Fed. Cir. 2008). Once a patent claim is held invalid, the patentee is collaterally estopped from asserting that claim against anyone. *Blonder-Tongue*, 402 U.S. at 349–50. Thus, even were CEATS to prevail in every argument it makes on appeal, it would still hold patents that have finally been held invalid in a suit against a defendant that is not a party to this appeal. The law of collateral estoppel prevents it from asserting such patents against anyone, including Defendants here.

### E.   Alternatively, CEATS's Failure to Seek Relief Promptly in the District Court Disentitles It to Rule 60(b) Relief

Alternatively CEATS's conduct disentitles it to relief under Rule 60(b).   *See Fackleman v. Bell*, 564 F.2d 734, 737 (5th Cir. 1977) ("A 60(b)(6) motion is an extraordinary remedy; like the 60(b) motion generally, it is not a substitute for appeal, and it is ordinarily not available to one who fails to appeal.").   As this Court explained in *Fiskar's, Inc. v. Hunt Mfg., Co.*, 279 F.3d 1378, 1383 (Fed. Cir. 2002):

> Hunt could have offered at trial what it considered to be its best evidence that Fiskars was not entitled to lost profits, including the existence of any acceptable non-infringing alternatives. We see no reason why Hunt should be entitled to a second opportunity to present its case. . . . Rule 60(b)(6) is unavailable to reopen a judgment on grounds of newly discovered evidence (that existed at the time of trial).

*See also Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1296 (Fed. Cir. 2013) ("In similar situations, in which a movant under Rule 60(b)(6) made a deliberate choice not to appeal or to pursue a particular litigation strategy, courts have found relief unwarranted.").

### F.   The Impossibility of Awarding the Relief That CEATS Requests Underscores the Nonjusticiability of This Appeal

In the conclusion to its brief, CEATS requests that this Court award the following relief:

> (1) reverse the district court's order denying Appellant's motion for relief from the final judgment; (2) enter

> judgment in Appellant's favor; (3) in the alternative,
> reinstate the underlying case and remand the matter to the
> district court for an evidentiary hearing on the issues
> raised in Appellant's Motion for Relief from Final
> Judgment or a new trial on the merits; and (4) for all
> other relief that this Court deems just and appropriate.

Opening Br. 40.

If this Court "enter[ed] judgment in Appellant's favor," what could such a judgment say? The judgment could not depend on the patents' validity, since (as discussed above) the invalidity judgment as to the non-Fish Defendants must survive this appeal, and CEATS will be estopped from asserting these patents ever again. Nor would further proceedings or a new trial be meaningful, for the same reason. Indeed, were this Court to vacate the judgment as to the Fish defendants and remand for a new trial, that new trial would be wasted. The district court would be obligated to grant judgment to those Defendants as a matter of law regardless what a second jury decided. The only vaguely plausible remedy – reopening the mediation – would similarly be futile, since Defendants are unlikely to pay CEATS for patents known to be invalid.

CEATS has not asked this Court for an award of costs it spent in mediation. Nor has it asked for a mere declaration that the mediation should have been conducted differently. It wants something it cannot have: a do-over on a trial long since concluded and the chance to revive patents finally determined to be invalid.

42

Neither this Court nor any other can give CEATS what it wants. This appeal is accordingly moot.

## CONCLUSION

The district court's denial of CEATS's Rule 60(b) motion should be affirmed.

Dated: January 21, 2014

*/s/ Mark A. Lemley*
Mark A. Lemley

Attorneys for Defendants-Appellees
Continental Airlines, Inc. n/k/a United
Airlines, Inc., Alaska Airlines, Inc.,
Horizon Air Industries, Inc., Delta Air
Lines, Inc., JetBlue Airways
Corporation, United Air Lines, Inc.
n/k/a United Airlines, Inc., Virgin
America, Inc., US Airways, Inc.,
Ticketmaster, LLC, TicketsNow.com,
Inc., and Live Nation Worldwide, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2014, I caused a copy of the foregoing Brief Of Defendants-Appellees Continental Airlines, Inc.; Alaska Airlines, Inc.; Horizon Air Industries, Inc.; Delta Air Lines, Inc.; JetBlue Airways Corporation; United Air Lines, Inc.; Virgin America Inc.; US Airways, Inc.; Ticketmaster LLC; TicketsNow.com, Inc.; and Live Nation Worldwide, Inc. to be served by the CM/ECF system, with courtesy copies later to be sent by U.S. Mail, on the following:

Dean A. Dickie
Ryan C. Williams
MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
225 West Washington Street, Ste 2600
Chicago, IL 60606

*Attorneys for Plaintiff-Appellant*
*Ceats, Inc.*

Massimo Ciccarelli, Esq.
James Michael Heinlen, Esq.
THOMPSON & KNIGHT LLP
1722 Routh Street, Ste 1500
Dallas, TX 75201

*Attorneys for Defendant-Appellee*
*Airtran Airways, Inc.*

George L. Hampton IV
Colin C. Holley
HAMPTONHOLLEY LLP
2101 East Coast Highwaym Ste 260
Corona del Mar, CA 92625

*Attorneys for Plaintiff-Appellant*
*Ceats, Inc.*

*/s/ Mark A. Lemley*
Mark A. Lemley

**CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32(a)(7)(B)–(C)
AND FEDERAL CIRCUIT RULE 32(b)**

TO BE INCLUDED IMMEDIATELY AFTER THE CERTIFICATE
OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT

1.     This brief has been prepared using:

    __X__ Microsoft Word 2010 (Version 14.0, Times New Roman, 14 point Typeface)

2.     EXCLUSIVE of the certificate of interest; table of contents; table of authorities; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains:

    __X__ 9,875 words, including graphics and illustrations (give specific number of words; may not exceed 14,000 words for opening brief or 7,000 words for reply brief);

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line printout.

Dated: January 21, 2014                 */s/ Mark A. Lemley*
                                         Mark A. Lemley

                                    Attorneys for Defendants-Appellees Continental Airlines, Inc. n/k/a United Airlines, Inc., Alaska Airlines, Inc., Horizon Air Industries, Inc., Delta Air Lines, Inc., JetBlue Airways Corporation, United Air Lines, Inc. n/k/a United Airlines, Inc., Virgin America, Inc., US Airways, Inc., Ticketmaster, LLC, TicketsNow.com, Inc., and Live Nation Worldwide, Inc.